2023 PA Super 99

| | | |
|---|---|---|
| TURNPAUGH CHIROPRACTIC HEALTH AND WELLNESS CENTER, P.C. (ZIMMERMAN) | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| ERIE INSURANCE EXCHANGE | : : | No. 1448 MDA 2021 |
| Appellant | : | |

Appeal from the Judgment Entered November 10, 2021
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2019-CV-06937-CV

BEFORE:  BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED JUNE 08, 2023**

Erie Insurance Exchange ("Erie") appeals from the judgment entered by the Court of Common Pleas of Dauphin County finding in favor of Turnpaugh Chiropractic Health and Wellness Center, P.C. ("Provider"), which sought reimbursement for unpaid bills for Cynthia Zimmerman's treatment covered by first party benefits under her insurance policy with Erie. The trial court also found Provider was entitled to attorneys' fees pursuant to various sections of the Motor Vehicle Financial Responsibility Law ("MVFRL"). We vacate the judgment in part and remand for a new trial on Provider's claim that Erie improperly repriced certain invoices.

On May 8, 2015, Ms. Zimmerman, a 58-year-old female, was injured in a motor vehicle accident. Before the accident, Ms. Zimmerman was receiving

_____

[*] Former Justice specially assigned to the Superior Court.

regular treatment from Provider for her cerebral palsy. Thereafter, Provider also treated Ms. Zimmerman for injuries sustained in the accident. As Ms. Zimmerman was insured by Erie at the time of the accident, Provider submitted invoices for Ms. Zimmerman's post-accident treatment to Erie.

By way of background, the MVFRL requires insurers to provide first party benefits for "reasonable and necessary medical treatment and rehabilitative services" for an injury covered by an automobile policy." 75 Pa.C.S.A. § 1712. Section 1797(a) of the MVFRL places billing limitations on medical providers who treat injuries covered by an auto insurance policy and requires providers to bill the insurer directly, and not the insured. 75 Pa.C.S.A. § 1797(a).[1]

Section 1797(b) of the MVFRL sets forth a process for insurers to contest their obligation to pay for the insured's treatment by contracting with "peer review organizations" (PROs) for an assessment of whether the treatment is reasonable and necessary.[2] *Id*. at § 1797(b)(1). If the PRO determines the treatment is reasonable and necessary, the insurer must pay the provider the outstanding amount with 12% interest per year on any amount withheld. *Id*.

---

[1] The parties use the term "Act 6" rates to refer to the amendments to the MVFRL which placed billing limitations on providers. 75 Pa.C.S.A. § 1797(a) (stating that providers "shall not require, request or accept payment for the treatment, accommodations, products or services in excess of 110% of the prevailing charge at the 75th percentile").

[2] The MVFRL defines "PRO" as any "Peer Review Organization with which the Federal Health Care Financing Administration or the Commonwealth contracts for medical review of Medicare or medical assistance services, or any health care review company, approved by the [Pennsylvania Insurance Commissioner], that engages in peer review for the purposes of determining that medical and rehabilitation services are medically necessary and economically provided." 75 Pa.C.S.A. § 1702.

at § 1797(b)(5). If the PRO finds the treatment is unreasonable or unnecessary, the provider may not collect any related payments and must return any submitted payments with interest. **Id**. at § 1797(b)(7).

Alternatively, if the insurer refuses to pay for past or future medical treatment without consulting with a PRO, Section 1797(b) permits the insured or provider to challenge the refusal before a court. **Id**. at § 1797(b)(4). Section 1797(b)(6) provides that where an insurer has refused to pay for treatment without consulting a PRO and a court determines that such treatment is medically necessary, the insurer must pay the outstanding amount plus 12% interest as well as the costs of the challenge and all attorneys' fees. **Id**. at § 1797(b)(6).

In this case, Ms. Zimmerman held a policy with Erie with $50,000 in first party medical benefits, which is beyond the minimum required by law. Notes of Testimony (N.T.), Trial, 3/31/21 - 4/28/22, at 35-36; 75 Pa.C.S.A. § 1711 (requiring insurers to provide at least $5,000 in first-party medical benefits in all automobile policies).

As Ms. Zimmerman's treatment progressed, Erie did not fully pay Provider's invoices, but repriced the bills and paid lower amounts. In August 2017, two years after Ms. Zimmerman's accident, Erie referred her case to peer review to challenge its obligation to pay for continued treatment. Dr. Richard Thomas Adams, D.C., the peer reviewer contracted by Erie, concluded that chiropractic care beyond August 31, 2017 was neither reasonable nor necessary. Thus, Erie refused to pay for treatment beyond August 31, 2017.

- 3 -

On September 19, 2019, Provider filed a complaint and subsequently filed an amended complaint on October 23, 2020, raising two theories of relief. First, Provider claimed Erie improperly repriced and did not fully pay invoices that predated August 31, 2017 which Provider had billed at "Act 6" rates. Provider requested an award of attorneys' fees for Erie's failure to pay these invoices in full in a timely manner.

Second, Provider asked the trial court to compel Erie to pay for invoices beyond August 31, 2017 as Ms. Zimmerman's continued treatment was reasonable and necessary. For this claim, Provider requested attorneys' fees pursuant to 75 Pa.C.S.A. § 1716 and § 1798 based on its allegation that Erie improperly referred the bills to peer review without reasonable circumstances that would cause a prudent person familiar with the process to implement peer review. Provider claimed Erie had documentation in its possession confirming Ms. Zimmerman's medical history and need for continued treatment.

Erie filed a motion for partial summary judgment, requesting the dismissal of Provider's claim that Erie improperly repriced its invoices for treatment prior to August 31, 2017 as Provider failed to produce an expert report in support of this claim.

In response, Provider argued that expert testimony was not required on the issue of billing as C. Chris Turnpaugh, D.C., DACNB (Ms. Zimmerman's treating chiropractor and the owner of Turnpaugh Chiropractic) could testify as to the care he provided to Ms. Zimmerman in the normal course of treatment as well as the codes and appropriate billing applied to that care.

Provider argued that the "Pennsylvania Insurance Department and Chiropractic Licensing Board require all chiropractors to be familiar with coding, coding issues, and take continuing education credits on proper billing, and coding methods and record keeping." Provider's response to Erie's motion for partial summary judgment, at 9. Provider did not indicate that it planned to offer another expert to testify as to the billing issue.

On January 4, 2021, the trial court entered an order denying Erie's motion for partial summary judgment as it concluded that "it does not appear that expert testimony is necessary" on the billing issue. Order, 1/4/21, at 1.

At a bench trial held on March 31, 2021 and April 28, 2021, Provider introduced testimony from Dr. Turnpaugh, David B. Smith, D.C., and Kathy Smith (Erie's medical management adjuster). Erie presented the testimony of Dr. Adams (the chiropractor who performed the peer review on its behalf) and Linda Lingle (medical bill review and repricing manager for HRAMS).[3]

On June 21, 2021, the trial court issued an opinion and order finding in favor of Provider on both counts. With respect to the invoices for Ms. Zimmerman's treatment *before* August 31, 2017, the trial court awarded Provider $5,211.68 plus interest for invoices which the trial court found Erie had improperly reduced. The trial court awarded Provider attorneys' fees in relation to Erie's failure to timely pay the invoices in full.

---

[3] Erie contracted with HRAMS or Health Resources and Auditing Management Services to adjust Provider's invoices through a software program.

In addition, with respect to the invoices for Ms. Zimmerman's treatment *after* August 31, 2017 for which Erie denied payment pursuant to the peer review, the trial court awarded Provider $7,177.68 plus interest. The trial court determined the treatment rendered to Ms. Zimmerman from the date of the accident through September 26, 2018 was necessary and reasonable. Trial Court Opinion (T.C.O.), 6/21/21, at 3.

With respect to Erie's refusal to pay these particular invoices, the trial court acknowledged that Provider was not entitled to attorneys' fees under Section 1797 of the MVFRL pursuant to the Supreme Court's decision in ***Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.***, 64 A.3d 1058, 1066 (Pa. 2013) (finding Section 1797(b)(4) only authorizes attorneys' fees where the insurer has not invoked the peer review process to challenge its obligation to pay for treatment).

However, the trial court determined Provider was entitled to attorneys' fees under two different provisions of the MVFRL. First, the trial court awarded attorneys' fees under Section 1798, which states that a trial court may award a reasonable attorney fee "[i]n the event an insurer is found to have acted with no reasonable foundation in refusing to pay" first party benefits when due. 75 Pa.C.S.A. § 1798(b).

Specifically, the trial court found that Erie's referral violated 31 Pa.Code § 69.52(a), which provides:

> A provider's bill shall be referred to a PRO only when circumstances or conditions relating to medical and rehabilitative services provided cause a prudent person, familiar with PRO

procedures, standards and practices, to believe it necessary that a PRO determine the reasonableness and necessity of care, the appropriateness of the setting where the care is rendered, and the appropriateness of the delivery of the care. An insurer shall notify a provider, in writing, when referring bills for PRO review at the time of the referral.

31 Pa.Code § 69.52(a). The trial court found Erie had no reasonable basis to refer Provider's invoices to peer review solely based on the fact that Ms. Zimmerman's treatment had continued for two years after her accident. The trial court indicated that Erie should have conducted a full evaluation of Ms. Zimmerman's treatment progress and documented this analysis in its log notes before deciding to send the case to peer review.

The trial court also found Provider was entitled to attorneys' fees pursuant to Section 1716, which requires insurers to pay benefits within 30 days of receiving reasonable proof of the amount of benefits. 75 Pa.C.S.A. § 1716. The trial court did not offer any analysis to support this finding.

Erie subsequently filed a motion for post-trial relief, which the trial court denied on October 12, 2021. Thereafter, on November 10, 2021, Erie filed a praecipe for the entry of final judgment as well as a notice of appeal.

On November 16, 2021, the trial court directed Erie to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On December 7, 2021, Erie filed a timely concise statement. On December 15, 2021, the trial court filed an order indicating that it had adequately addressed the issues raised by Erie in its previous orders and opinions.

Erie raises the following issues for our review on appeal:

1. Should the provider's claim that the insurer repriced hundreds of its bills incorrectly under Act 6 and the Medicare Program over the course of several years have been dismissed as a matter of law when the provider failed to produce any expert report in support of this claim prior to trial?

2. Should the trial court's award for bills repriced incorrectly under Act 6 be vacated where it is based upon errors of law and unsupported by competent evidence?

3. Does the plain language of 75 Pa.C.S.A. §§ 1716 and 1798(b) preclude an award of attorney fees for medical bills denied payment pursuant to the results of a peer review completed under § 1797(b), regardless of the reasonableness of the preceding PRO referral, where the PRO referral is a part of "challeng[ing]" the bills before a PRO under § 1797(b), as interpreted by the Pennsylvania Supreme Court in *Doctor's Choice Physical Med. & Rehab Ctr. P.C. (Laselva v. Travelers Pers. Ins. Co.*, 634 Pa. 2, 128 A.3d 1183 (2015), and not "refusing" the payment of benefits that are due under §§ 1716 and 1798(b)?

Erie's Brief, at 4-5 (reordered for ease of review).

Before reaching the merits of Erie's claims, we note with displeasure that Erie's brief does not fully comport with our Rules of Appellate Procedure. While Erie sets forth three issues in its "Statement of the Questions Involved" portion of its brief, the "Argument" section contains several different arguments that were not raised in its "Statement of Questions Involved" section. *See* Pa.R.A.P. 2116(a) ("[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

Nevertheless, this Court is able to discern from the defined sections in the Argument section of Erie's brief that it intends to raise the following issues for our review. Erie claims the trial court erred in (1) denying its motion for partial summary judgment; (2) allowing Provider to present expert testimony

from David Smith, D.C., outside the scope of his pretrial report; (3) precluding Erie's expert, Linda Lengle, from offering certain expert opinions regarding the repricing of Provider's bills; (4) failing to find that Provider's claim that Erie improperly repriced bills under Act 6 is against the weight of the evidence; and (5) awarding attorneys' fees under Sections 1716 and 1798 of the MVFRL for the medical bills which Erie denied payment pursuant to a peer review.

First, Erie purports to appeal the denial of its motion for partial summary judgment, in which it argued that Provider's claim that Erie improperly repriced certain invoices was legally insufficient as Provider failed to present an expert witness or an expert report to support this claim.

Upon the denial of a motion for summary judgment which is based on the sufficiency of the evidence supporting the plaintiff's claims, a party has multiple avenues to seek relief. The party may (1) seek permission to file an interlocutory appeal pursuant to 42 Pa.C.S.A. § 702(b),[4] or (2) challenge the legal sufficiency of the plaintiff's cause of action during trial by filing a motion for compulsory nonsuit at the close of plaintiff's case-in-chief pursuant to Pa.R.C.P. 230.1 or a motion for a directed verdict at the conclusion of the trial

---

[4] As a general rule, "an order denying summary judgment is [] a non-appealable interlocutory order." **McDonald v. Whitewater Challengers, Inc.**, 116 A.3d 99, 104 (Pa.Super. 2015) (citation omitted). However, a party may seek permission to file an interlocutory appeal of the denial of summary judgment concerning a question of law. **Id**. at 104 n.7 (citing **Pridgen v. Parker Hannifin Corp**, 905 A.2d 422, 432-33 (Pa. 2006)). As noted *infra*, Erie did not seek permission to file an appeal of the denial of its summary judgment motion.

pursuant to Pa.R.C.P. 226. To preserve a post-trial claim to the legal sufficiency of the plaintiff's case for appeal, the defendant must recast this claim in a motion for judgment n.o.v. (JNOV) pursuant to Pa.R.C.P. 227.1(a)(2).

As such, a motion for summary judgment generally does not preserve an issue for appellate review once a case proceeds to trial and a final judgment is entered. Thereafter, the party must file a motion for JNOV and the disposition of that motion will provide the basis for appellate review. This Court has recognized that in cases where "a summary judgment motion is based on the sufficiency of the evidence to prove the plaintiff's claims, once a case goes to trial and evidence is presented at trial, the denial of summary judgment is moot and the sufficiency of the evidence must be analyzed based on the trial record." **Xtreme Caged Combat v. Zarro**, 247 A.3d 42, 50–51 (Pa.Super. 2021), *appeal denied*, 260 A.3d 924 (Pa. 2021) (citing **Whitaker v. Frankford Hospital of City of Philadelphia**, 984 A.2d 512, 517 (Pa.Super. 2009)).

In **Whitaker**, this Court noted that, once the parties proceeded to trial, the parties presented evidence, and a verdict was entered in the plaintiff's favor, the defendants' motion for summary judgment became moot and the "issue became whether the trial court erred in failing to grant them [JNOV]." **Whitaker**, 984 A.2d at 517. **See also Ortiz v. Jordan**, 562 U.S. 180, 184 (2011) (an order denying summary judgment "retains its interlocutory character as simply a step along the route to final judgment. Once the case

- 10 -

proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion") (citation omitted).

A recent panel of this Court held in **Yoder v. McCarthy Constr., Inc.**, 291 A.3d 1 (Pa.Super. 2023) that "where summary judgment is denied and **the same claim** then proceeds to trial, post-trial and appellate review must focus on whether [JNOV] is required, not on whether summary judgment or nonsuit were improperly denied." **Id.** at 13 n.15 (emphasis in original).[5]

In this case, upon the denial of its motion for summary judgment, Erie did not seek permission to file an interlocutory appeal pursuant to Section 702. As such, Erie lost the opportunity to seek immediate relief on this claim before it proceeded to trial.

However, after trial commenced and a verdict was entered in favor of Provider, the issue became whether the trial court erred in denying Erie's motion for JNOV, which raised the same legal argument as Erie raised in its motion for summary judgment. Thus, we may review Erie's claim in the context of the trial court's denial of its motion for JNOV.

_____

[5] We recognize that this Court's precedent has not always directly addressed whether a party may appeal the denial of a motion for summary judgment after a trial has been held. **See Windows v. Erie Ins. Exch.**, 161 A.3d 953, 956-57 (Pa.Super. 2017) (reaching the merits of a challenge to the denial of summary judgment without explanation as to why the denial was reviewable); **Krepps v. Snyder**, 112 A.3d 1246, 1257-60 (Pa.Super. 2015) (same). This Court has on occasion reviewed the merits of challenges to the denial of summary judgment after a trial has been held. **See Brownlee v. Home Depot U.S.A., Inc.**, 241 A.3d 455, 2020 WL 6197405, *3-4 (Pa.Super. October 22, 2020) (unpublished memorandum).

Our standard of review is as follows:

[w]e review the denial of a request for JNOV for an error of law that controlled the outcome of the case or an abuse of discretion. ***Hutchinson v. Penske Truck Leasing Co.***, 876 A.2d 978, 984 (Pa. Super. 2005). In this context, an "[a]buse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-wil[l]." ***Id***. (citation omitted).

When reviewing the denial of a request for JNOV, the appellate court examines the evidence in the light most favorable to the verdict winner. ***Thomas Jefferson Univ. v. Wapner***, 903 A.2d 565, 569 (Pa. Super. 2006). Thus, "the grant of [JNOV] should only be entered in a clear case[.]" ***Id***. (citation omitted).

There are two bases upon which a movant is entitled to JNOV: "one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." ***Rohm and Haas Co. v. Continental Cas. Co.***, 566 Pa. 464, 781 A.2d 1172, 1176 (2001) (citation omitted). When an appellant challenges a jury's verdict on this latter basis, we will grant relief only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." ***Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.***, 126 A.3d 959, 967 (Pa. Super. 2015) (citation omitted).

***Harley v. HealthSpark Found.***, 265 A.3d 674, 684 (Pa.Super. 2021).

While Erie's claim is based on its assertion that Provider failed to prove it was entitled to judgment as a matter of law on the repricing claim as it did not identify an expert witness in discovery on this topic, this issue became moot at trial after the trial court allowed Provider to question one of its experts, Dr. Smith, about Erie's repricing of Provider's invoices.

This Court has held that:

[a]n issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an

intervening change in the applicable law[.] In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*Lico, Inc. v. Dougal*, 216 A.3d 1129, 1132 (Pa.Super. 2019) (quoting *In re R.D.*, 44 A.3d 657, 680 (Pa.Super. 2012) (citations omitted)).

In permitting Provider to offer expert testimony at trial in support of its repricing claim, the trial court undermined its prior ruling and seemingly conceded that Erie was correct in asserting that expert testimony was necessary on the billing issue. Given these factual circumstances in which Provider did produce expert testimony to support its repricing claim, the issue of whether Provider was required to support this claim with expert testimony became moot.[6]

Nevertheless, the relevant issue then became whether the trial court abused its discretion in allowing Provider to offer Dr. Smith's expert testimony on the repricing claim over Erie's objection that it had not been provided any notice in pretrial discovery that Dr. Smith would offer such an opinion. As discussed *infra*, we find Erie is entitled to a new trial on the repricing claim in light of Dr. Smith's testimony that was outside the scope of his expert report.

When reviewing evidentiary challenges, our standard of review is well-established:

_____

[6] While we recognize there are exceptions to the mootness doctrine, we need not determine whether they apply given our conclusion that Erie is entitled to a new trial based on the trial court's erroneous decision to allow Provider to offer expert testimony on the repricing issue when Provider had not identified Dr. Smith as an expert on this topic in pretrial discovery.

- 13 -

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***E. Steel Constructors, Inc. v. Int'l Fid. Ins. Co.***, 282 A.3d 827, 844

(Pa.Super. 2022).

When reviewing the scope of an expert's testimony, this Court is guided

by the following principles:

Experts may testify at trial concerning matters which are within the fair scope of a pretrial report. The avoidance of unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony is the primary purpose of the rule requiring that testimony be within the fair scope of the pretrial report. ***Walsh v. Kubiak***, 443 Pa.Super. 284, 661 A.2d 416, 419-20 (1995) (*en banc*), *appeal denied*, 543 Pa. 716, 672 A.2d 309 (1996) (citations and quotation marks omitted).

The fair scope rule is addressed in Pa.R.C.P. 4003.5(c) and provides that an expert witness may not testify on direct examination concerning matters which are either inconsistent with or go beyond the fair scope of matters testified to in discovery proceedings or, as here, included in a separate report. In ***Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.,*** 348 Pa.Super. 285, 502 A.2d 210 (1985), this Court explained that:

[I]t is impossible to formulate a hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his or her pretrial report. Rather, the determination must be made with reference to the particular facts and circumstances of each case. The controlling principle which must guide is whether the purpose of Rule 4003.5 is being served. The purpose of requiring a party to

> disclose, at his adversary's request, "the substance of the facts and opinions to which the expert is expected to testify" is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony. In other words, in deciding whether an expert's trial testimony is within the fair scope of [his] report, the accent is on the word "fair." The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and [his] trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

**Nazarak v. Waite**, 216 A.3d 1093, 1106–1107 (Pa.Super. 2019) (quoting

**Hassel v. Franzi**, 207 A.3d 939, 951 (Pa.Super. 2019) (quotation and

citations omitted)).

Erie asserts that the trial court erred in permitting Dr. Smith to testify as to the appropriate Act 6 reimbursement amounts for Provider's medical bills, as this topic was outside the scope of Dr. Smith's expert report, which only focuses on his opinion that Provider's treatment of Ms. Zimmerman was medically necessary and reasonable.

Specifically, Erie claims the trial court erred in overruling its objections when Provider's counsel presented Dr. Smith with (1) a chart from the 2015 Pennsylvania Chiropractic Society (PCS chart) that lists the compensation allowances pursuant to applicable reimbursement limitations under Act 6 and (2) a chart prepared by Provider containing the PCS reimbursement amounts compared with the amounts Provider billed in its invoices. **See** N.T. at 174-80. Erie claimed that because Dr. Smith's expert report did not state any

conclusions as to billing practices, Erie did not have full, fair, and meaningful opportunity to provide a rebuttal to Dr. Smith's expert testimony on this topic.

At trial, when Erie objected to Provider's questioning of Dr. Smith about the relevant billing exhibits as outside the scope of his expert report, Provider's counsel noted that, in the last sentence of Dr. Smith's second report dated May 19, 2020, Dr. Smith indicated that "[a] review of the diagnostic coding used by Turnpaugh Chiropractic did not elicit any shortcomings in documentation." Smith report, 5/19/20, at 2. Provider argued that questioning Dr. Smith about the PCS chart and Provider's damages chart was not outside the scope of his expert report as both documents were employed by Provider to bill for Ms. Zimmerman's care. The trial court overruled Erie's objection on this basis.

However, we agree with Erie that the cursory sentence at the end of Dr. Smith's second report did not adequately notify Erie that it should expect Dr. Smith would be testifying to proper billing practices under Act 6. While the last sentence of Dr. Smith's report revealed that he reviewed Provider's coding and found it to be appropriate, Dr. Smith did not in any way discuss whether Provider had correctly billed Erie pursuant to Act 6.

Moreover, we note that Provider made no attempt to inform Erie that Dr. Smith would provide expert testimony on the repricing issue in response to Erie's motion for partial summary judgment regarding Provider's failure to obtain an expert report in support of the repricing claim. As such, Provider's

attempt to question Dr. Smith about whether Provider had correctly billed Erie under Act 6 was beyond the scope of his expert report.

Further, we must also determine whether the improper admission of Dr. Smith's testimony caused Erie harm or prejudiced Erie such that a new trial is warranted. *E. Steel Constructors, Inc.*, *supra*. As noted above, the trial court informed the parties in its order denying Erie's motion for summary judgment that it did not believe expert testimony was necessary on the billing issue. In addition, Provider did not provide an expert report in discovery pertaining to the repricing issue and claimed it would rely on the testimony of Dr. Turnpaugh, the treating chiropractor, to prove its billing claim.

Despite Erie's objections at trial, the trial court permitted Provider to admit the PCS chart and damages chart into evidence and allowed Dr. Smith to offer an opinion within a reasonable degree of chiropractic certainty that both Provider's coding and damages were correct. N.T. at 179-80. In its order and opinion entering judgment in favor of Provider, the trial court expressly found that Dr. Smith credibly testified that Provider had correctly billed Erie based on the charts admitted at trial.

Since Erie was not properly notified that Dr. Smith would offer expert testimony as to the billing of Provider's invoices, Erie was deprived of the opportunity to adequately prepare a meaningful response and rebuttal for the defense. Erie could have presented its own expert to examine the accuracy of the exhibits presented at trial and to question Dr. Smith's conclusions that Provider had correctly billed Erie.

Accordingly, we conclude that a new trial is warranted on the repricing issue as the trial court's decision to allow Dr. Smith to testify outside the scope of his expert report resulted in prejudice to Erie.

In its third issue, Erie challenges the trial court's decision to preclude its witness, Linda Lengle, from offering an expert opinion at trial regarding the repricing of Provider's bills under Act 6 as she had not provided a pretrial expert report. Ms. Lengle served as the medical bill review and repricing manager for HRAMS.

Erie concedes that it failed to identify Ms. Lengle as an expert witness in discovery pursuant to Pa.R.C.P. 4003.5, but argues that it relied on the trial court's pretrial order indicating that expert testimony was not necessary on the repricing issue. As such, Erie claims the trial court's preclusion of Ms. Lengle from testifying as an expert constituted "disparate treatment" as Provider was permitted to offer expert opinion on the repricing issue even though its expert, Dr. Smith, had not discussed this topic in his expert report.

Although the trial court concluded that Ms. Lengle could not testify as an expert as Erie failed to identify her as an expert in discovery and she did not submit an expert report, the trial court gave Ms. Lengle wide latitude to testify based on her experience as a medical billing specialist on numerous matters, including but not limited to, the MVFRL's limitation on reimbursement for auto-related injuries, the disputed bills in this case, Provider's damages, and her opinion as to why certain invoices were paid at a reduced amount. Ms. Lengle testified as to how the timing of a service and its grouping with

other treatments may result in reduced payment and also informed the court about the Medicare Correct Coding Initiative.

Moreover, given our conclusion above that Erie is entitled to a new trial on the repricing issue, we point out the parties are not limited to offer the same evidence on remand. Both parties will have the opportunity to obtain supplemental reports from Dr. Smith, Dr. Turnpaugh, Ms. Lengle, or new experts on the issue of Provider's coding and billing of the treatment at issue as well as the propriety of Erie's repricing and bundling of Provider's invoices. *See Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 507 A.2d 1, 11 (Pa. 1986) ("[t]he grant of a new trial ordinarily means a new trial generally; it restores a case to the status it had before the trial took place and is fully open to be tried *de novo* as to all parties and all issues") (cleaned up); *Merklin v. Philadelphia Suburban Water Co.*, 361 A.2d 754, 755 (Pa.Super. 1976) (clarifying that when a new trial is awarded, the parties can "introduce new evidence and assert new defenses not raised at the first trial").

In its fourth issue, Erie asserts that it is entitled to a new trial based on its claim that "the trial court's award of bills purportedly repriced incorrectly under Act 6 was against the weight of the evidence." Erie's Brief, at 47. Due to our award of a new trial on the repricing issue, we need not address Erie's

challenge to the weight of the evidence presented at the trial that underlies this appeal.[7]

In its last challenge on appeal, Erie claims the trial court erred in awarding attorneys' fees under Sections 1716 and 1798(b) of the MVFRL for invoices beyond August 31, 2017 based on its finding that Erie improperly referred Ms. Zimmerman's continued treatment to peer review.[8]

Erie argues that Section 1797 of the MVFRL contains the exclusive means for an insurer to challenge the reasonableness and necessity of an insured's treatment and also delineates the exclusive remedies when a party successfully challenges an insurer's refusal to pay treatment invoices. Erie asserts that Section 1797 only authorizes an award of attorneys' fees when the insurer fails to invoke peer review before refusing to pay for treatment and a court determines the treatment is necessary and reasonable.

Our courts have consistently emphasized that "there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established

_____

[7] We additionally note that this issue is waived as Erie failed to raise a challenge to the weight of the evidence in his court-ordered Rule 1925(b) statement. Our courts have consistently held that "in order to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925." **Rahn v. Consol. Rail Corp.**, 254 A.3d 738, 745 (Pa.Super. 2021) (quoting **Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1999)).

[8] Erie does not challenge the trial court's rejection of the peer review and its finding that Ms. Zimmerman's continued treatment from August 31, 2017 to September 26, 2018 was medically necessary and reasonable.

exception." **Merlino v. Delaware Cnty.**, 728 A.2d 949, 951 (Pa. 1999) (citing

**Chatham Communications, Inc. v. General Press Corp.**, 344 A.2d 837,

842 (Pa. 1975) (citations omitted)).

Thus, we must determine whether the trial court erred in finding the

MVFRL provides statutory authorization for attorneys' fees for provider

challenges to peer-review determinations when the initial referral to peer

review is deemed to be unreasonable. When presented with an issue of

statutory interpretation, which is a question of law, this Court's standard of

review is *de novo* and our scope of review is plenary. **Goodwin v. Goodwin**,

280 A.3d 937, 943 (Pa. 2022) (citation omitted).

We are also mindful of the following principles:

> [t]he Statutory Construction Act directs that the object of all interpretation and construction of statutes is to ascertain and effectuate the legislature's intent. 1 Pa.C.S. § 1921(a); **Chanceford Aviation Properties, LLP v. Chanceford Twp. Bd. of Supervisors**, 592 Pa. 100, 923 A.2d 1099, 1104 (2007). Generally, the best indicator of legislative intent is the plain language of the statute. **Walker v. Eleby**, 577 Pa. 104, 842 A.2d 389, 400 (2004). In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); **Commonwealth v. Conklin**, 587 Pa. 140, 897 A.2d 1168, 1175 (2006). Only "[w]hen the words of the statute are not explicit" may a court resort to the rules of statutory construction, including those provided in 1 Pa.C.S. § 1921(c). **Chanceford**, 923 A.2d at 1104. A statute is ambiguous when there are at least two reasonable interpretations of the text under review **See Delaware Cnty. v. First Union Corp.**, 605 Pa. 547, 992 A.2d 112, 118 (2010). Moreover, "[s]tatutes *in pari materia* shall be construed together, if possible, as one statute." 1 Pa.C.S. § 1932.

Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

***Warrantech Consumer Prod. Servs., Inc. v. Reliance Ins. Co. in Liquidation***, 96 A.3d 346, 354–55 (Pa. 2014) (italics added).

To reiterate, Section 1797(b) of the MVFRL sets forth a framework for an insurer to challenge its obligation to pay for treatment covered by an applicable auto policy by submitting the invoices to peer review. Section 1797(b) also sets forth a remedial scheme to address the circumstances in which an insurer utilizes the PRO process or fails to invoke peer review:

**(b) Peer review plan for challenges to reasonableness and necessity of treatment.--**

**(1) Peer review plan.--**Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary. An insurer's challenge must be made to a PRO within 90 days of the insurer's receipt of the provider's bill for treatment or services or may be made at any time for continuing treatment or services.

**(2) PRO reconsideration.--**An insurer, provider or insured may request a reconsideration by the PRO of the PRO's initial determination. Such a request for reconsideration must be made within 30 days of the PRO's initial determination. If reconsideration is requested for the services of a physician or other licensed health care professional, then the reviewing individual must be, or the reviewing panel must include, an individual in the same specialty as the individual subject to review.

**(3) Pending determinations by PRO.--**If the insurer challenges within 30 days of receipt of a bill for medical treatment or rehabilitative services, the insurer need not pay the provider subject to the challenge until a determination has been made by

the PRO. The insured may not be billed for any treatment, accommodations, products or services during the peer review process.

**(4) Appeal to court.—**A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, *the reasonableness or necessity of which the insurer has not challenged before a PRO*. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

**(5) PRO determination in favor of provider or insured.--**If a PRO determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12% per year on any amount withheld by the insurer pending PRO review.

**(6) Court determination in favor of provider or insured.--***If, pursuant to paragraph (4),* a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and *all attorney fees.*

**(7) Determination in favor of insurer.--**If it is determined by a PRO or court that a provider has provided unnecessary medical treatment or rehabilitative services or merchandise or that future provision of such treatment, services or merchandise will be unnecessary, or both, the provider may not collect payment for the medically unnecessary treatment, services or merchandise. If the provider has collected such payment, it must return the amount paid plus interest at 12% per year within 30 days. In no case does the failure of the provider to return the payment obligate the insured to assume responsibility for payment for the treatment, services or merchandise.

75 Pa.C.S.A. § 1797(b) (emphasis added).

In this case, the parties agree that with the trial court's determination

that Provider was not entitled to attorneys' fees under Section 1797(b)(6) for

Provider's post-August 31, 2017 invoices as Erie timely sought peer review to contest Ms. Zimmerman's continued chiropractic treatment.

The trial court indicated that it was bound by the decision in **Herd** in which the Supreme Court held that an award of attorneys' fees under Section 1797(b)(6) is only authorized for court determinations in favor of the provider where the insurer has not pursued peer review to challenge its obligation to pay for contested treatment. **Herd**, 64 A.3d at 1060. The Supreme Court observed that the language in Section 1797(b)(6) permitting an award of attorneys' fees only pertains to court challenges under Section 1797(b)(4) where "the insurer *has not challenged* [the reasonableness or necessity of treatment] before a PRO." **Id**. (quoting 75 Pa.C.S.A. § 1797(b)(4),(6)).

While the trial court admitted that Section 1797 does not address whether attorneys' fees may be awarded for a provider's successful challenge of a PRO determination, it reasoned that attorneys' fees were warranted under Section 1798 and 1716 of the MVFRL. The trial court did not discuss the interplay of the three statutory provisions, but instead awarded attorneys' fees under Section 1798 and Section 1716 in isolation without attempting to read the three sections together.

In light of the ambiguity in Section 1797, we must construe this statutory section together with Section 1798 and 1716 of the MVFRL, as all three sections pertain to the payment of first party benefits under the MVFRL. It is well-settled that "[l]aws which apply to the same persons or things or the same class of persons or things are *in pari materia* and, as such, should be

- 24 -

read together where reasonably possible." ***DeForte v. Borough of Worthington***, 212 A.3d 1018, 1022 (Pa. 2019). ***See*** 1 Pa.C.S.A. § 1932(a) ("[s]tatutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things").

As noted above, the trial court's decision to award Provider attorneys' under Sections 1716 and 1798 of the MVFRL was based on its finding that Erie made an improper decision to send Ms. Zimmerman's treatment to peer review instead of paying the benefits when due. We are not persuaded by the trial court's conclusion that this theory fell outside the statutory framework set forth in Section 1797.

We reject the trial court's award of attorneys' fees under Section 1716, which provides:

> Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits. … Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

75 Pa.C.S.A. § 1716.[9]

Section 1716 establishes a general rule that an insurer must pay benefits within thirty days of receiving reasonable proof of the amount of benefits. However, Section 1797 provides an exception to that general rule,

---

[9] The trial court failed to include any analysis to justify its award of attorneys' fees under Section 1716.

providing that an insurer may defer payment of challenged invoices if the insurer has timely sought peer review. Specifically, Section 1797(b)(3) states that "if the insurer challenges within 30 days of receipt of a bill for medical treatment or rehabilitative services, the insurer need not pay the provider subject to the challenge until a determination has been made by the PRO." 75 Pa.C.S.A. § 1797(b)(3).

As Erie timely submitted Ms. Zimmerman's continued treatment to peer review, Erie's payment of Ms. Zimmerman's benefits was not overdue but was deferred until the PRO made its determination. When the PRO found Ms. Zimmerman's treatment was not necessary or reasonable, Erie was not obligated to pay for her treatment at that point.

Likewise, Provider is not entitled to attorneys' fees under Section 1798(b), which provides as follows:

> **Unreasonable refusal to pay benefits**.--In the event an insurer is found to have acted with no reasonable foundation in refusing to pay the benefits enumerated in subsection (a) when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

75 Pa.C.S.A. § 1798(b). Section 1798(a) references claims for first party benefits provided under motor vehicle liability insurance under Subsection B of the MVFRL. *Id*. at § 1711, 1798(b).

In other words, Section 1798 provides that when an insurer acts "with no reasonable foundation in refusing to pay [first party benefits] when due,"

the insurer must pay for the benefits with interest along with attorneys' fees. 75 Pa.C.S.A. § 1798(b).

When this language is construed in light of Section 1797, an insurer does not "refuse to pay" benefits under Section 1798 when it submits a case to peer review. Rather, the insurer employs a PRO to conduct a professional assessment of the challenged treatment to determine whether the care is necessary and reasonable. Based on the PRO's determination, the insurer may assess whether it has a reasonable foundation to deny payment of benefits.

As noted above, an insurer that timely invokes the peer review process may delay payment of the challenged benefits until the PRO has made its determination. As such, the insurer invoking the peer review process does not "refuse to pay" for benefits until a PRO determines whether the treatment is necessary or reasonable. If the PRO makes a determination in favor of the insurer, the insurer is relieved of its obligation to pay for such care. If the PRO makes a determination in favor of the provider that the care is necessary and reasonable, at that point, the insurer likely has no reasonable foundation to refuse to pay for the challenged treatment.

In contrast, an insurer acts with no reasonable foundation in refusing to pay benefits when it does so without a completed peer review. This is consistent with the award of attorneys' fees in Section 1797(b)(6).

While the trial court found Erie had acted unreasonably in referring Ms. Zimmerman's treatment to peer review simply based on the fact that her treatment had continued for two years, Erie did not refuse to pay Ms.

Zimmerman's benefits when due, but utilized the peer review process to determine whether continued treatment was necessary and reasonable. Based on that ruling, Erie could then determine whether it had a reasonable foundation to deny payment for continued treatment.

We acknowledge Provider's criticism of the current statutory framework which may allow insurers to utilize the peer review process to defend every claim, even for care that is clearly reasonable and necessary, merely to attempt to avoid payment of benefits due under a policy. We also recognize that providers may be discouraged from pursuing court action to seek reimbursement for treatment from insurers due to high litigation costs.

However, our decision to overturn the trial court's award of attorneys' fees in this case is consistent with the precedent set forth by our Supreme Court emphasizing that "[t]here is ... simply no express statutory authorization for fee shifting on provider challenges to peer-review determinations." ***Doctor's Choice Physical Med. & Rehab. Ctr., P.C. v. Travelers Pers. Ins. Co.***, 128 A.3d 1183, 1191 (Pa. 2015) (quoting ***Herd***, 64 A.3d at 1066). While the Supreme Court's decisions in ***Herd*** and ***Doctor's Choice*** solely addressed whether attorneys' fees were warranted under Section 1797 for a peer review challenge and did not analyze the language contained in Sections 1716 or 1798, we find the logic expressed therein instructive to our analysis in this case.

The Supreme Court also noted in ***Herd*** that Section 1797 has previously been challenged due to the absence of an avenue for judicial review of PRO

determinations. *Herd*, 64 A.3d at 1066 (citing *Terminato v. Pa. Nat'l Ins. Co*, 645 A.2d 1287, 1293, n. 3. (Pa. 1994)). In light of this discrepancy, the Insurance Department promulgated a regulation to permit a provider or an insured to appeal from a determination of a PRO that the contested treatment is unreasonable or unnecessary. 31 Pa.Code 69.52(m).

While the Supreme Court recognized that the Insurance Department's regulation served to address the due process concerns posed by the Legislature's failure to provide judicial review in Section 1797 for PRO determinations, the Supreme Court emphasized that "[t]he regulation, nonetheless, neither provides for fee shifting nor serves to bootstrap the statutory fee-shifting requirement pertaining to non-peer-reviewed insurer refusals into the peer-review arena." *Herd*, 64 A.3d at 1066.[10]

In addition, the *Herd* court recognized there are valid concerns with the peer review process, including the cost of challenging a peer review as well as the notion that the peer review process is inherently biased as "[t]he detachment and neutrality required of a fact-finder is conspicuously absent in the contractual relationship between a PRO and an insurer." *Id*. at 1065 (quoting *Terminato*, 645 A.2d at 1291).

Nevertheless, despite these policy concerns, the *Herd* court declined to construe Section 1797 to permit attorneys' fees for the challenge of a peer

---

[10] The *Herd* court also acknowledged that there may also be due process concerns with Section 1797's failure to award attorneys' fees in the PRO arena. However, in *Herd* as well as the instant case, the parties did not raise constitutional challenges to Section 1797.

review determination as the plain language of the statute does not provide authorization for such an award:

> We acknowledge Provider's concerns with the financial incentives in the peer-review industry and with the fact that litigation costs incurred by providers may discourage legitimate challenges. The fee accruals here—in the amount of $27,000 to vindicate a $1380 claim—present a stark example of the difficulty. Moreover, we appreciate that Section 1797 is neither comprehensive nor a model of clarity, in various respects. Nevertheless, fee shifting raises a host of mixed policy considerations in and of itself, which this Court has found are best left to the General Assembly, in the absence of contractual allocation or some other recognized exception to the general, American rule. The Legislature's failure to adjust Section 1797 over time as imperfections have been revealed by experience, while unfortunate, does not alter the functions ascribed to our respective branches of government. Accordingly, in the absence of a demonstrated constitutional infirmity, courts generally must apply plain terms of statutes as written; they are to confine efforts to effectuate legislative intent—above and beyond the prescriptions of written laws—to ambiguous provisions; and they are to enforce the longstanding responsibility allocated to the policymaking branch to provide for fee shifting, when it is deemed appropriate, through explicit pronouncements.

*Herd*, 64 A.3d at 1066–67.

Thereafter, in ***Doctor's Choice***, the Supreme Court concluded that a provider was not entitled to attorneys' fees when the insurer submitted the bills to peer review, even though the peer review did not comport with statutory and regulatory requirements.

The Supreme Court found a panel of this Court erred in interpreting the language in Section 1797(b)(4) to allow attorneys' fees in a peer review challenge by finding that an insurer "has not challenged" the reasonableness and necessity of treatment before a PRO when the peer review was not validly

completed. ***Doctor's Choice***, 128 A.3d at 1189. The Supreme Court found that there is no express language in the statute to signify that term "challenged" signifies a "completed, valid review," but rather the term is utilized within the statute to signify the "insurer's submission of provider invoices to a PRO for review." ***Id***.

The Supreme Court again acknowledged policy concerns with the fairness of the peer review process but exercised judicial restraint in declining to find attorneys' fees were warranted under Section 1797. The Supreme further explained that:

> [t]his Court remains cognizant of the shortcomings of the peer-review regime. We have no reasonable means, however, of assessing the degree to which these may be offset by the benefits of cost containment and potentially lower insurance premiums available to the public at large. Rather, the Legislature is invested with the implements to conduct investigations, hearings, and open deliberations to address such salient policy matters. ***Accord Seebold v. Prison Health Servs., Inc.,*** 618 Pa. 632, 653, 57 A.3d 1232, 1245 (2012). In such landscape, we decline to deviate from conventional statutory interpretation to advance directed policy aims.

***Doctor's Choice***, 128 A.3d at 1191 (footnote omitted).[11]

---

[11] Our conclusion in this case is also consistent with decisions of federal district courts in Pennsylvania. ***See Green v. State Farm Ins. Co***., No. CIV. A. 1:CV-09-1668, 2010 WL 330355, at *2 (M.D.Pa. Jan. 20, 2010) (unreported) ("because attorney's fees are not recoverable under subsection 1797(b)(5) when an insurer uses the PRO process, Plaintiff cannot recover them here, nor invoke section 1716 or section 1798 to recover them"); ***Jack A. Danton, D.O., P.C. v. State Farm Mut. Ins. Co.***, 769 F. Supp. 174, 177 (E.D.Pa. 1991) ("section 1798 only explains what is meant by an attorney fee, and repeats what is clearly stated in section 1797: if an insurance company behaves unreasonably in a denial of benefits, it must pay attorney's fees"). *(Footnote Continued Next Page)*

In the same manner, we cannot uphold the trial court's award of attorneys' fees in this case absent express statutory authorization as the plain language of the relevant statutes does not provide for attorneys' fees in the peer review context. *See Merlino*, *supra*.

Accordingly, we conclude that the trial court erred in awarding Provider attorneys' fees under Sections 1716 and 1798 as there is no statutory authorization for an award of attorneys' fees when an insurer invokes the peer review process to challenge its obligation to pay for an insured's treatment.

For the foregoing reasons, we vacate the trial court's award to Provider for invoices that predated August 31, 2017 and remand for a new trial solely on the repricing issue. We affirm the trial court's award for Provider's post-August 31, 2017 invoices, in which the trial court found Ms. Zimmerman's treatment to be reasonable and necessary, but vacate the award of attorneys' fees as discussed herein.

Judgment affirmed in part with respect to Provider's post-August 31, 2017 invoices. Judgment vacated in part with respect to invoices that predated August 31, 2017 which Erie allegedly repriced incorrectly as well as the award of attorneys' fees with respect to Provider's post-August 31, 2017

---

"[A]lthough we are not bound by decisions from … courts in other jurisdictions, we may use them for guidance to the degree we find them useful, persuasive, and ... not incompatible with Pennsylvania law." *Ferraro v. Temple University*, 185 A.3d 396, 404 (Pa.Super. 2018) (citation omitted).

invoices. Remand for proceedings consistent with this decision. Jurisdiction relinquished.

McCaffery, J., joins this Opinion.

Bowes, J., files a Concurring Statement in which Stevens, P.J.E. and McCaffery, J. joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2023