2023 PA Super 44

| | | |
|---|---|---|
| CHRIS TAYLOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PENNSYLVANIA STATE | : | No. 1473 MDA 2021 |
| CORRECTIONS OFFICERS | : | |
| ASSOCIATION | : | |

Appeal from the Order Entered October 15, 2021
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s):  2021-688

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.*

OPINION BY BOWES, J.:                                        **FILED MARCH 20, 2023**

Chris Taylor appeals from the October 15, 2021 order sustaining the preliminary objections of the Pennsylvania State Corrections Officers Association ("PSCOA") as to Mr. Taylor's claim under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-41, which sought a legal determination that PSCOA had violated its duty of fair representation.  We affirm.

The underlying facts of this matter are undisputed.  Mr. Taylor is employed by the Pennsylvania Department of Corrections at SCI-Huntingdon in a bargaining unit represented by PSCOA.  Mr. Taylor was a member of this labor union until June 2019, when he and several of his colleagues resigned from PSCOA in response to the United States Supreme Court's holding in ***Janus v. AFSCME, Council 31***, ___ U.S. ___, 138 S.Ct. 2448, 2486 (2018),

_____

* Former Justice specially assigned to the Superior Court.

which established that "public-sector unions may no longer extract agency fees from nonconsenting employees" under the First Amendment to the United States Constitution. Despite his resignation, PSCOA remains Mr. Taylor's "exclusive representative" pursuant to the Public Employe Relations Act ("PERA"), 43 P.S. §§ 1101.101-.2301.[1] *See* 43 P.S. § 1101.606. Accordingly, PSCOA remains obligated under Pennsylvania law "to bargain on wages, hours, terms and conditions of employment" upon Mr. Taylor's behalf. *Id*. Furthermore, both parties agree PSCOA has an ongoing duty under the relevant collective bargaining agreement ("CBA") to submit employment grievances on Mr. Taylor's behalf and represent him at related proceedings.

In or about July 2019, PSCOA promulgated a schedule of fees in connection with its putative representation of non-union members like Mr. Taylor in the context of various employment grievances ("the fee schedule"). *See id*. at Exhibit A. This document provides as follows:

Scheduling Fees for Grievance and Heart and Lung Arbitrations

**Grievance Process**
Step 1:     Filing fee $50.00
Step 2:     Filing fee $100.00
                Panel cost of 3 business agents @ [$]40.00 per hour

---

[1] We note that "[i]ndividual claims by employees against the union that allege a breach of the duty of fair representation do not qualify as unfair labor practices in violation of PERA." *Case v. Hazelton Area Educational Support Personnel Ass'n (PSEA/NEA)*, 928 A.2d 1154, 1161 (Pa.Cmwlth. 2007) (*en banc*). Although the decisions of the Commonwealth Court do not bind this Court, such writings do constitute persuasive authority. *See Eastern Steel Constructors, Inc. v. International Fid. Ins. Co.*, 282 A.3d 827, 861 n.40 (Pa.Super. 2022).

Representation from local-Local VP @ $200.00 per day plus travel and lodging

Step 3: Filing fee/Cost of Arbitrator $3000.00
Lawyer @ $250.00 per hour plus travel and lodging
Business Agent @ $40.00 per hour
Executive Officers @ $85.00 per hour

**Heart and Lung Process (Denial or termination of benefit)**
Filing fee $225.00
Cost of Arbitrator $3000.00
Lawyer @ $250.00 per hour plus travel and lodging
Medical Reports and Depositions – Cost varies ($1000.00 to $4000.00) Average cost is $5000.00 and up.

*Id*. (line breaks homogenized).

In June 2021, Mr. Taylor initiated this declaratory judgment action by filing a civil complaint in the Court of Common Pleas of Huntingdon County.[2] *See* Complaint, 6/23/21, at ¶¶ 1-47. Therein, he asserted, upon non-specific "information and belief," that PSCOA "will refuse to file a grievance on behalf of a nonmember without first receiving payment" as provided in the above-quoted fee schedule. *Id*. at ¶ 20. Furthermore, Mr. Taylor alleged that the fee schedule was instituted in "bad faith" to discourage non-members of PSCOA from filing grievances and to retaliate against Mr. Taylor and other union resignees. *Id*. at ¶¶ 29-31. Thus, he requested a determination that the institution of non-member fees in connection with employment grievances

---

[2] Our jurisprudence suggests that claims in the courts of common pleas concerning a union's alleged breach of the duty of fair representation must be equitable in nature. *See Waklet-Riker v. Sayre Educ. Ass'n*, 656 A.2d 138, 141 (Pa.Super. 1995). It is well-established that "declaratory judgment actions arise in equity[.]" *Carlino East Brandywine, L.P. v. Brandywine Village Assoc.*, 197 A.3d 1189, 1199 (Pa.Super. 2018).

and arbitration by PSCOA had breached the duty of fair representation under Pennsylvania state law. *Id*. at ¶¶ 35-47.

PSCOA filed preliminary objections in the nature of a demurrer pursuant to Pa.R.C.P. 1028(a)(4), arguing Mr. Taylor had failed to allege a sufficient basis to sustain a cause of action for a breach of the duty of fair representation. Specifically, PSCOA asserted that Mr. Taylor had failed to plead sufficient material facts in support of his claims for relief. *See* Preliminary Objections, 8/18/21, at ¶ 34 ("The instant [c]omplaint contains no averment that that PSCOA acted in bad faith other than the conclusory statement made by [Mr. Taylor.]"). The trial court held a brief hearing on the preliminary objections, wherein Mr. Taylor rested upon the allegations present in his complaint. *See* N.T. Hearing, 12/27/21, at 4 ("I think that the facts here are far from conclusionary. . . . And there are plenty of paragraphs that related to how it is bad faith and discriminatory against non-members.").

On October 15, 2021, the trial court sustained PSCOA's preliminary objections and dismissed Mr. Taylor's complaint without prejudice. Rather than amend, on November 9, 2021, Mr. Taylor filed a *praecipe* to dismiss his claims with prejudice. On November 15, 2021, he filed a timely notice of appeal to this Court. Both Mr. Taylor and the trial court have complied with the requirements of Pa.R.A.P. 1925.

Mr. Taylor has raised a single issue for our review:

> Does a complaint allege sufficient facts to show that a union violates its duty to fairly represent all employees when it alleges that the union discriminates against those who are not union

members, and institutes policies to retaliate against an employee it disfavors, in the administration of rights under the collective bargaining agreement?

Appellant's brief at 2.

In reviewing this matter, we bear the following legal principles in mind:

> In ruling on preliminary objections in the nature of a demurrer, the trial court was required to accept as true all well-pleaded allegations of material fact and all reasonable inferences deducible from those facts and resolve all doubt in favor of the non-moving party. The question presented was whether, on the facts averred, the law says with certainty that no recovery is possible. When any doubt exists as to whether the demurrer should be sustained, this doubt should be resolved in favor of overruling it.

> On appeal from the trial court's order overruling preliminary objections in the nature of [a] demurrer, our standard of review is *de novo* and our scope of review is plenary. Hence, we apply the same standard as the trial court in evaluating the legal sufficiency of the complaint, and examine whether, on the facts averred, the law says with certainty that no recovery is possible.

*Lomax v. Sullivan*, 282 A.3d 790, 792 (Pa.Super. 2022) (cleaned up). In this context, "no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer." *Mellon Bank, N.A. v. Fabinyi*, 650 A.2d 895, 899 (Pa.Super. 1994). However, "a court need not accept as true conclusions of law, unwarranted inferences, or expressions of opinion." *Bayada Nurses, Inc. v. Comm., Dept. of Labor and Industry*, 8 A.3d 866, 884 (Pa. 2010).

This case implicates the duty of fair representation, which arises because "a union acts as a trustee for the rights of its members and employees in the bargaining unit." *Case v. Hazelton Area Educational Support*

*Personnel Ass'n (PSEA/NEA)*, 928 A.2d 1154, 1158 (Pa.Cmwlth. 2007) (*en banc*).[3]  Consequently, "the members and employees are beneficiaries of a fiduciary obligation owed to them by the union," which the union transgresses "when it acts in bad faith toward its members, and violates the fiduciary trust created from the principal-agent relationship."  *Case*, *supra* at 1158 (citing *Falsetti v. Local Union No. 2026, UMWA*, 161 A.2d 882, 895 (Pa. 1960)).  Specifically, "[a] union has the duty to fairly represent its members throughout any grievance and arbitration process provided for by a collective bargaining agreement."  *Miles v. FOP Lodge #5*, 217 A.3d 892, 898-99 (Pa.Cmwlth. 2019).  A labor union violates its duty if, in processing an employee's grievance, it does "not act in good faith, in a reasonable manner and without fraud[.]"  *Falsetti*, *supra* at 895-96.  Finally, "a public employee's remedy for his bargaining agent's refusal to submit a grievance . . . is an action against the union for damages for breach of its duty of fair representation."  *Ziccardi v. Comm.*, 456 A.2d 979, 981 (Pa. 1984).

Mr. Taylor's arguments are best summarized as follows:  "Pennsylvania law prohibits a union from discriminating against a nonmember in the administration of rights under a CBA.  And, in this case, [PSCOA's] own contract grants rights to all employees it represents.  The Union may not now

---

[3]  We note that the name of one of the litigants, Hazleton Area Educational Support Personnel Association, is misspelled in the name of this case.  *See Case*, *supra* at 1155.  For the sake of consistency and accurate citation, we have utilized the "correct" title of the case throughout this writing.

condition those rights to nonmembers on newly invented, and illegal, pay-to-play fees." Appellant's brief at 11-12. Under Mr. Taylor's theory, PSCOA's circulation of the fee schedule is sufficient to demonstrate it has acted in bad faith and to retaliate against Mr. Taylor for resigning from the union.

The scope of PSCOA's representation of Mr. Taylor in the context of employment grievances emanates from the terms of the CBA, as evidenced by the contents of Mr. Taylor's complaint. **See** Complaint, 6/23/21, at ¶¶ 18-19 (averring that PSCOA's representation of Mr. Taylor in the context of grievances is governed by "Article 35" of the CBA); Appellant's brief at 10 ("As a corrections officer for the Commonwealth, Mr. Taylor is entitled to the employments the CBA guarantees to his position."). Despite referring to this inherently critical document throughout his complaint, Mr. Taylor has neglected to attach a copy of the CBA to any filing submitted in the trial court. Hence, it was not included in the certified record on appeal. This glaring oversight creates significant ambiguity with respect to the grievance process dictated by the CBA and, more importantly, the arguable impact of the fee schedule upon the grievance and arbitration process that PSCOA must follow. To the extent Mr. Taylor relies upon the CBA to support his position, such reliance is fruitless due to the deficiency of his pleadings and the record.

As drafted, Mr. Taylor's claim for relief is not grounded in the specific terms of his employment. Rather, his argument is much more general and avers that PSCOA is precluded, under all circumstances, from imposing the

fee schedule. In staking out this position, he asserts that the union cannot treat him any differently from any other employees of the bargaining unit. Mr. Taylor is mistaken on this point, however, as it is well-established under Pennsylvania law that unions enjoy significant discretion in declining to pursue grievances raised by the individuals that they represent:

> Individual bargaining unit members have no absolute right to have their grievances arbitrated. *Ziccardi v. Commonwealth*, 456 A.2d 979, 981 (Pa. 1982). Rather, a union has broad discretion to determine whether to pursue a grievance to arbitration and has no duty to arbitrate every grievance. *Falsetti*, *supra* at 894 n.19. . . . A wide range of reasonableness must be allowed to a bargaining representative in serving the unit it represents, subject always to good faith and honesty of purpose in the exercise of this discretion. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953). A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *See Air Line Pilots Association, International v. O'Neill*, 499 U.S. 65, 78 (1991). Bad faith, for its part, requires a showing that a union either acted in a fraudulent, deceitful, or dishonest manner or with an improper motive. *See Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299 (1971).

*Anderson v. Pleasant Valley Educational Support Professionals' Assoc.*, 272 A.3d 999 (Pa.Cmwlth. 2022) (unpublished memorandum at 6).[4] Thus, it is incumbent upon a plaintiff to "plead any material facts upon which a claim of bad faith could be based" in the context of an action for an alleged breach of the duty of fair representation. *Waklet-Riker v. Sayre Area Educ.*

_____

[4] The Commonwealth Court permits the citation of its unreported decisions filed after January 15, 2008, for their persuasive value. *See* Commonwealth Court I.O.P. § 414(a).

***Ass'n***, 656 A.2d 138, 141 (Pa.Super. 1995). A plaintiff's failure to allege sufficient facts on this required element is "fatal" to their claims. ***Id***.

Here, the factual record establishes that Mr. Taylor resigned from PSCOA and no longer pays an agency fee to PSCOA. Approximately one month later, PSCOA issued the fee schedule and advised Mr. Taylor that any future employment grievances filed through PSCOA would be governed by these provisions. These are the only relevant factual averments that Mr. Taylor has pleaded in support of his allegations of breach of duty and bad faith. ***See*** Complaint, 6/23/21, at ¶¶ 31. Thus, Mr. Taylor's claim is that PSCOA's promulgation of the fee schedule is self-evidently an act of bad faith under Pennsylvania law since it constitutes differential treatment.

As noted above, there is no merit to Appellant's general contention that a union must treat all grievances from the individuals it represents identically. ***See Anderson***, ***supra*** at 6. To the contrary, PSCOA is empowered to make reasonable assessments with respect to deciding whether to pursue employee grievances based upon "the factual and legal landscape" at the time of its actions. ***Id***. Furthermore, there is no support under Pennsylvania law for Mr. Taylor's broad contention that PSCOA is not permitted to charge ancillary fees to non-union members in connection with representing such individuals in the context of employment grievances. Indeed, we note that there is a dearth of

on-point Pennsylvania precedent concerning this specific question.[5]   Under

such circumstances, we are permitted to "look to federal decisions for

guidance" where there is "no meaningful difference" between state and federal

labor policies.  ***See***, ***e.g.***, ***Burse v. Comm., Pennsylvania Labor Relations***

***Board***, 425 A.2d 1182, 1184 (Pa.Cmwlth. 1981).  Under this rubric, ***Janus***

provides substantial guidance here.  In that case, the United States Supreme

Court concluded that a state's "extraction of agency fees from nonconsenting

public-sector employees violates the First Amendment," overruling ***Abood v.***

***Detroit Bd. of Ed.***, 431 U.S. 209 (1977) (permitting mandatory collection of

_____

[5]   The holdings selectively cited by Mr. Taylor in support of his position are unavailing and inapposite.  ***See*** Appellant's brief at 12-27.  The only such passage that arguably directly addresses the issue of representing non-union members in grievances processes comes from *dicta* from ***Falsetti v. Local Union No. 2026, UMWA***, 161 A.2d 882 (Pa. 1960), wherein our Supreme Court quoted the following passage from a secondary source:  "'The bargaining representative would be guilty of a breach of duty if it refused to press a justifiable grievance either because of laziness, prejudice or unwillingness to spend money on behalf of employees who were not members of the union.'"  ***Id***. at 895 n.21 (quoting Cox, Individual Enforcement of Collective Bargaining Agreements, 8 Lab.L.J. 850, 858-9 (1957)).  This quotation was offered as an example of the manner in which certain legal scholars had defined the general scope of the duty of fair representation.  ***Id***.

Critically, however, ***Falsetti*** never explicitly adopted this precise formulation with respect to the expenditure of funds on behalf of non-union members and no subsequent Pennsylvania court has ever elected to do so.  Thus, the passage cited by Mr. Taylor is mere *dicta* that boasts no precedential value.  ***See Castellani v. Scranton Times, L.P.***, 124 A.3d 1229, 1243 n.11 (Pa. 2015).  In light of the authoritative guidance offered by ***Janus*** on the matters raised by Mr. Taylor, we decline his invitation to elevate this footnote to the level of binding precedent under Pennsylvania law.

agency fees from non-members if utilized solely for "collective bargaining, contract-administration, and grievance-adjustment purposes").

In *Janus*, the Court also addressed one of the nascent issues posed by the holding, namely that public-sector unions like PSCOA would be forced to represent non-members like Mr. Taylor in grievance proceedings, as follows:

> What about the representation of nonmembers in grievance proceedings? Unions do not undertake this activity solely for the benefit of nonmembers . . . . Representation of nonmembers furthers the union's interest in keeping control of the administration of the collective-bargaining agreement, since the resolution of one employee's grievance can affect others. And when a union controls the grievance process, it may, as a practical matter, effectively subordinate the interests of an individual employee . . . to the collective interests of all employees in the bargaining unit.
>
> **In any event, whatever unwanted burden is imposed by the representation of nonmembers in disciplinary matters can be eliminated through means significantly less restrictive of associational freedoms than the imposition of agency fees. Individual nonmembers could be required to pay for that service or could be denied union representation altogether.**

*Janus*, *supra* at 2468 (cleaned up; emphasis added).

Thus, while acknowledging that "free riders" like Mr. Taylor posed a potential problem, the Court in *Janus* concluded that coercive agency fees were not a viable solution. Rather, the Court suggested that the assessment of individual fees associated with a union's representation of a non-member in pursuing a grievance is an appropriate, alternative response to this financial conundrum. The above-quoted passage from *Janus* leads us to conclude that there is a distinction between shop agency fees assessed as an automatic

condition of a non-member's employment in a bargaining unit, and the permissive payment of certain fees in exchange for actual services rendered by a public-sector union, *i.e.*, representation in employment grievances and arbitrations.[6] According to the United States Supreme Court, "[t]his more tailored approach, if applied to other objectors, would prevent free ridership while imposing a lesser burden on First Amendment rights." ***Id***. at 2468 n.6.

Viewing the totality of the factual and legal landscape of this case, we cannot conclude that Mr. Taylor has proffered material facts demonstrating that PSCOA has violated the duty of fair representation. As noted above, it is undisputed that Mr. Taylor chose to alienate himself from his union membership and elected to cease paying an agency fee to PSCOA. In response to these actions, PSCOA adopted the fee schedule to ease the financial burden posed by its representation of non-members such as Mr. Taylor in future employment grievances. This is precisely the arrangement described by the United States Supreme Court as a permissible alternative to compulsory agency fees. ***See Janus***, ***supra*** at 2468 n.6. In the absence of the CBA, it is not apparent from the record if, or how, the fee schedule will otherwise negatively impact Mr. Taylor's rights with respect to his

---

[6] As an example of such an alternative arrangement, the Supreme Court cited an Illinois statute providing that individuals who declined to pay agency fees on religious grounds could be charged a "reasonable cost" by the union if they later sought to avail themselves of union representation in a "grievance or arbitration procedure[.]" ***Janus***, ***supra*** at 2468 n.6 (citing 5 ILCS 315/6(g)).

representation by PSCOA. Furthermore, Mr. Taylor has offered no allegations that the fees imposed by PSCOA are excessive or unrelated to prospective grievance and arbitration proceedings. The mere fact that PSCOA has implemented the fee schedule is not, in and of itself, sufficient to establish a violation of the duty of fair representation. Without additional material facts to support his conclusory averments, we cannot find that Mr. Taylor has asserted a sufficient basis to establish that PSCOA has acted arbitrarily, irrationally, or fraudulently. ***See Anderson***, ***supra*** at 6.

Based upon the foregoing discussion, we agree with the trial court's assessment that Mr. Taylor is not entitled to recovery as a matter of law.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/20/2023