J-A15011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| SALVATORE CASTELLUCCIO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GIANT EAGLE, INC. AND/OR GIANT | : | |
| EAGLE MARKETS, INC. | : | |
| | : | |
| Appellants | : | No. 1086 WDA 2022 |

Appeal from the Judgment Entered October 5, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-16-005861

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: JULY 17, 2023**

Giant Eagle, Inc., and/or Giant Eagle Markets, Inc. (Giant Eagle), appeals from the judgment entered in this negligence action brought by Salvatore Castelluccio (Mr. Castelluccio).  We affirm.

This appeal arises from a jury verdict in favor of Mr. Castelluccio.  Mr. Castelluccio's slip-and-fall accident occurred on April 4, 2014, inside Giant Eagle's grocery store located in Moon Township, Pennsylvania (the Moon Store).  Mr. Castelluccio alleged in his complaint that on April 4, 2014, "and for some time prior thereto," Giant Eagle:

> [A]llowed a dangerous condition to exist on the premises [of the Moon Store,] consisting of a mat which did not stay in place and which folded over or bunched up[,] which had a tendency to create a trip hazard or which was placed in a manner as to pose a trip hazard.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Complaint, 4/4/16, ¶ 10. Mr. Castelluccio claimed, "the foregoing condition caused [him] to fall and sustain [] injuries and damages," including "injuries to his neck including the disc located at C6-7 and/or C5-6". *Id.* ¶¶ 12, 14 The complaint further alleged Giant Eagle

> had notice and/or knowledge of the aforementioned dangerous condition, or, in the exercise of reasonable care, should have had notice and knowledge of the aforementioned dangerous condition and/or caused the condition to exist.

*Id.* ¶ 11.

Giant Eagle filed an answer and new matter on May 9, 2016. The case proceeded to a jury trial in September 2021. The jury returned a verdict in favor of Mr. Castelluccio, awarding him $95,000 in damages.[1] Giant Eagle timely filed a post-trial motion (PTM), claiming, *inter alia*, the trial court erred in certain evidentiary rulings, and in instructing the jury. *See* PTM, 10/7/21, ¶¶ 1-5, 16-17. On August 29, 2022, the trial court denied the PTM.

Giant Eagle timely appealed on September 20, 2022. The trial court entered judgment against Giant Eagle on October 5, 2022. Giant Eagle and the trial court have complied with Pa.R.A.P. 1925.

Giant Eagle presents four issues for review:

1. In this slip-and-fall case, Giant Eagle presented evidence about the lack of prior incidents at the store in question. The trial court concluded that, by presenting this evidence, Giant Eagle

---

[1] The trial court subsequently molded the verdict to include delay damages, resulting in an award of $118,000.

opened the door to evidence relating to subsequent incidents at other stores.  Did the trial court err?

2. Mr. Castelluccio did not present any video evidence or any eyewitness testimony in his case.  Rather, his case rested almost exclusively on his testimony.  During his testimony, he demonstrated for the jury his purportedly limited range of motion in his neck.  Later, the trial court precluded Giant Eagle from impeaching Mr. Castelluccio's testimony with security footage from a few weeks before trial that showed him moving his neck without apparent limitation.  Did the trial court err?

3. Giant Eagle sought to introduce deposition testimony from a Giant Eagle employee.  The employee asserted that he saw Mr. Castelluccio earlier in the day in question and that he told him to be careful when he saw Mr. Castelluccio kicking and moving a mat.  The trial court precluded Giant Eagle from introducing this testimony.  Did the trial court err?

4. Mr. Castelluccio presented no evidence showing that Giant Eagle created a dangerous condition that caused his injuries.  Yet the trial court instructed the jury that the jury need not find that Giant Eagle was on notice of any dangerous condition if it concluded that Giant Eagle itself created a dangerous condition.  Did the trial court err?

Giant Eagle Brief at 4-5.[2]

Giant Eagle first claims the trial court improperly "allow[ed] Mr. Castelluccio to introduce irrelevant evidence of subsequent incidents" that

_____

[2] We observe Giant Eagle's issues are phrased differently in its court-ordered Pa.R.A.P. 1925(b) concise statement of errors.  Although we overlook this defect and conclude Giant Eagle's issues are nevertheless preserved for our review, we caution that failure to properly preserve claims in a Rule 1925(b) statement can result in waiver.  **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement … are waived."); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (same).

occurred at other Giant Eagle grocery store locations,[3] and incorrectly "concluded that Giant Eagle 'opened the door' to evidence relating to subsequent incidents…." *Id.* at 16 (bold omitted). Giant Eagle claims it "specifically limited its argument and evidence" to the lack of "prior incidents that occurred [] at the Moon [S]tore." *Id.* at 17; *see also id.* at 17-18 (citing the trial transcript). Giant Eagle further complains, "evidence about **subsequent** incidents at **other** stores is not 'reasonably related' to evidence about the lack of prior incidents at the Moon [S]tore." *Id.* at 18-19 (emphasis in original). Accordingly, Giant Eagle asks that we "vacate the verdict and remand for a new trial." *Id.* at 19.

Mr. Castelluccio counters the trial court properly admitted the study into evidence, where:

> Throughout the trial, [Giant Eagle] continually claimed how safe its mats were. The study proved that the mats were not as safe as [Giant Eagle] claimed. Hence, the study was admissible to disprove [Giant Eagle's] claim of how safe the mats were.

Appellee's Brief at 10.

When reviewing evidentiary challenges, our standard of review is well-established:

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of

---

[3] Specifically, Giant Eagle challenges the trial court's admission of an internal Giant Eagle safety study (the study), performed between 2014 and 2016, "on incidents involving the type of mat Mr. Castelluccio tripped on." Trial Court Opinion, 12/8/22, at 11.

J-A15011-23

discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Turnpaugh Chiropractic Health & Wellness Ctr., P.C. v. Erie Ins. Exch.***,

2023 PA Super 99, *6 (Pa. Super. June 8, 2023) (citation omitted).[4]

Further,

[t]he threshold inquiry with admission of evidence is whether evidence is relevant." ***Commonwealth v. Collins***, 888 A.2d 564, 577 (Pa. [] 2005).  Evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Pa.R.E. 401(a)-(b).  "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Drumheller***, 808 A.2d 893, 904 (Pa. [] 2002).  "All relevant evidence is admissible, except as otherwise provided by law.  Evidence that is not relevant is not admissible."  Pa.R.E. 402.  "The court may exclude relevant evidence if its probative value is outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Pa.R.E. 403.

***Commonwealth v. Jackson***, 283 A.3d 814, 817-18 (Pa. Super. 2022) (some

citations modified).

The trial court opined it properly admitted the study into evidence at

trial:

If the study were being offered to prove Giant Eagle had notice of the danger encountered by Mr. Castelluccio, [the court] would agree there would need to be proof the other incidents were

_____

[4] We also apply this standard of review to Giant Eagle's second and third issues, which challenge evidentiary rulings.

- 5 -

similar. However, the study was offered to challenge or rebut Giant Eagle's argument that it was an isolated incident and that the mats did not pose any danger to customers. *See id.* at 311-12 and 321. This "opened the door" to the study that Giant Eagle conducted on the mats. *See Tillery v. Children's Hospital of Philadelphia*, 156 A.3d 1233[,] 1243[, (Pa. Super. 2017)]].

Trial Court Opinion, 12/8/22, at 11 (citations modified).

Our review discloses the trial court's foregoing reasoning is supported by the record and the law, and we discern no abuse of its discretion in admitting the relevant study. *See Tillery*, 156 A.3d at 1243 (holding, "if a party presents evidence about a certain issue, then they open the door to rebuttal evidence that may not otherwise have been admissible."); *see also Duchess v. Langston Corp.*, 709 A.2d 410, 412 (Pa. Super. 1998). Giant Eagle's first issue does not merit relief.

In its second issue, Giant Eagle argues the trial court erred in precluding it from introducing into evidence security video footage of Mr. Castelluccio shopping at two other Giant Eagle stores, recorded in the months prior to Mr. Castelluccio's fall at the Moon Store.[5] *See* Giant Eagle Brief at 20-26. Giant Eagle acknowledges it did not disclose the video footage in question until the time of trial, *see id.* at 21, but claims it nevertheless "fully complied with its discovery obligations," because:

_____

[5] We further explain the security video below, but note that Giant Eagle claims it belied Mr. Castelluccio's trial testimony that his fall and injury at the Moon Store caused him limited mobility in his neck. *See* Giant Eagle Brief at 21-22.

- 6 -

When Giant Eagle filed its pre-trial statement in this case, it did not include the security footage because it did not know that the footage existed; it found and reviewed the fresh security footage only after Mr. Castelluccio testified.

*Id.* at 23. Giant Eagle claims, as "the security footage directly impeaches Mr. Castelluccio's credibility as a witness," the trial court erred in precluding Giant Eagle from presenting this evidence at trial. *Id.* at 26.

Mr. Castelluccio disagrees, arguing the trial court "was acting within its discretion when it excluded this last minute evidence," which Giant Eagle failed to disclose to opposing counsel until "the last day of trial." Appellee's Brief at 16. We agree.

The trial court competently rejected Giant Eagle's claim in its opinion:

The surveillance video undoubtedly surprised Mr. Castelluccio's counsel as Giant Eagle's counsel did not disclose the video until the morning of the last day of the trial. *See* [N.T., 9/24-29/21, at] 467-68. Giant Eagle argued that [the trial court] should admit the evidence as rebuttal to Mr. Castelluccio's testimony of having limited range of motion in his neck. **Giant Eagle, however, was aware since at least 2017 that Mr. Castelluccio was claiming this limited range of motion because Mr. Castelluccio said so during his deposition**. *See id.* at 472-73. In answers to interrogatories[,] Giant Eagle stated it "does not have any photographs, films, videotapes or digital images related to the claim in this case." [Mr. Castelluccio's] interrogatories directed to [Giant Eagle] attached to [Mr. Castelluccio's] brief in opposition to motion for post-trial relief filed 12/10/2021, as Document 59. But, when Giant Eagle's trial counsel asked his client to look for video of Mr. Castelluccio after he testified at the trial, Giant Eagle was able to use its loyalty program records to pinpoint recent dates he was in one of its facilities and find him on the facilities' surveillance videotapes. *See id.* at 469, 472. Giant Eagle, therefore[,] could have used this same method to obtain surveillance video of Mr. Castelluccio at any time during the **six years** that his lawsuit was pending[,] but instead did not do so until it surprised Mr. Castelluccio's counsel **on the morning of the last day of trial**.

Even though Pennsylvania Rule of Civil Procedure 212.2 mandates "a list of all exhibits a party intends to use at trial" be in pre-trial statements, [Pa.R.C.P. 212.2(a)(4),] the video surveillance was not included in Giant Eagle's pre-trial statement. A note in the Rule states that a list of exhibits for use in rebuttal or for impeachment is not contemplated, as "[t]hese matters are governed by case law." [Pa.R.C.P. 212.2(a)(4), note.] ***Bindschusz v. Phillips***, 771 A.2d 803 (Pa. Super. 2001), is such case law, with the circumstances that led the trial judge to exclude a surveillance video being nearly identical to the surveillance video that surprised Mr. Castelluccio's counsel in this proceeding. The Superior Court upheld exclusion of the surveillance video because the negative interrogatory answer and nondisclosure in the pre-trial statement "resulted in unfair and prejudicial surprise to appellee midway through the trial…." ***Id.*** at 811. In a footnote, the Superior Court invalidated the argument that such surveillance video is for rebuttal or impeachment, holding that it is substantive evidence of the extent of a disputed injury. ***Id.***, footnote 6. Thus, [the trial court] correctly excluded the surveillance video of Mr. Castelluccio.

Trial Court Opinion, 12/8/22, at 14-15 (emphasis added; citations modified).

Again, the trial court's cogent reasoning is supported by the record and the law. Giant Eagle's second issue lacks merit.

Giant Eagle next claims the trial court improperly "excluded relevant and critical deposition testimony" from Thomas Stuby (Mr. Stuby), "a Giant Eagle employee who passed away between his deposition and trial." Giant Eagle Brief at 26. According to Giant Eagle, "Mr. Stuby described an encounter that he had with Mr. Castelluccio[,] prior to his fall[,] in which Mr. Stuby warned him to 'be careful[.]'" ***Id.*** Giant Eagle complains: "If the jury had heard Mr. Stuby's testimony and concluded that Mr. Stuby had indeed warned Mr. Castelluccio earlier that day 'to be careful' …, the jury could have concluded

that Giant Eagle had sufficiently discharged any duty that it owed to Mr. Castelluccio." *Id.* at 28-29.

Contrary to Giant Eagle, Mr. Castelluccio claims "the trial court properly excluded speculative testimony attempting to link [Mr. Castelluccio] with an unidentified customer acting suspiciously earlier in the [Moon] Store[.]" Appellee's Brief at 20 (capitalization omitted). According to Mr. Castelluccio: "When the testimony of [Mr.] Stuby is read in context it is clear that he is speculating that the individual that he saw kicking a rug was Mr. Castelluccio." *Id.* at 21.

In its opinion, the trial court competently detailed Mr. Stuby's deposition testimony, and determined the court did not err in excluding this evidence:

> During his November 6, 2017 deposition[,] Mr. Stuby testified that he was working as a part-time produce clerk on the day Mr. Castelluccio was injured. Below are relevant portions of the questions asked of Mr. Stuby and his answers:
>
> Q: [D]o you have a recollection of meeting Mr. Castelluccio that day [of his fall in the Moon Store]?
>
> A: Inadvertently, yes. I was … taking care of the non-organic section, and to me, I don't know, he's — I sort of can judge a little bit how people are, but I didn't see the guy with a buggy or a basket or anything, and he was coming through the produce area. And he was, like, sort of, like, kicking or shifting the rug a little bit, and I said, you've got to be careful; these rugs do move. He said, okay. So he left and I went in, and [I informed] my manager, … I said, you know, we got a guy out there, I don't know what he's up to, but he … doesn't have a buggy. He wasn't asking me any questions about food or produce, and he's out there, like, kicking the carpet or shifting the carpet a little bit, like, kicking on it. So from that point on, [the

manager] said he'll check it out, and other than that, I didn't see him.

* * *[6]

Transcript of Thomas Stuby Deposition, p. 24-[26].

* * *

[The questioning of Mr. Stuby continued:]

Q: Okay. Mr. Castelluccio, who is seated to my left —

A: Yes.

Q: -- [D]o you remember ever seeing him in the store?

A: I don't — it's hard to tell. You know, he may have. He could have had a hat on. He could have had a winter coat over the years. It's hard to tell.

Q: But there's some customers you know on sight; correct?

A: Absolutely. They're there every day or every other day. You know them by name.

Q: Is Mr. Ca[s]telluccio anyone you recognize in that manner?

A: No.

* * *

Q: And you don't know Mr. Castelluccio personally, do you?

A: No.

Q: And you've not had any encounters with him between April 4th, 2014, and today; correct?

_____

6 We omit several pages of irrelevant testimony.

A: No.

Q: You are still employed at Giant Eagle —

A: Yes, I am.

Q: --correct? And you had some responsibility for the care and maintenance of the mats in the store; is that correct?

A: Yes.

Q: If a supervisor learned someone — and when I say supervisor, I mean anyone above you in the chain of command … learned that one of these mats were out of place, would you potentially be in trouble?

A: I could be.  I could be if it happened on different occasions.  That first time, it may be a warning, you know.  Why didn't you take care of it? You know — but … we get videos every year about safety: mopping the floors, wet floors, blocking the door ways, picking stuff up, wiping stuff up.  I mean, it's an indoctrination they pump in your head, so you're always on guard for that stuff.

Transcript of Thomas Stuby [D]eposition, pp. 39-41.

[The trial court's] analysis of this testimony discloses Mr. Stuby first saying he inadvertently met Mr. Castelluccio on the date of injury and then repeating seven or more times that he was not sure Mr. Castelluccio was the same guy he saw kicking or shifting a mat.  Hence, [the court] surmise[s] that what [Mr. Stuby] meant when he testified he inadvertently met Mr. Castelluccio is that the meeting did not occur until after Mr. Castelluc[c]io returned to the store in a sling and took photographs.  [The court] determined the probative value of the evidence of an **unidentified** customer kicking or shifting a mat earlier that day is outweighed by the danger of unfair prejudice to Mr. Castelluccio.  ***See*** Pennsylvania Rule of Evidence 403[, *supra*].  **There is little, if any, probative value because the testimony has no bearing on whether Giant Eagle or Mr. Castelluccio was negligent**.  However, the danger of unfair

- 11 -

prejudice is readily apparent. **The testimony is confusing and could have led the jury to think Mr. Castelluccio staged his fall, which would have been improper**.

Mr. Stuby's testimony also could be interpreted as **speculation** by him that Mr. Castelluccio was the same person he saw kicking or shifting a mat. Speculation is not admissible evidence. **See Winschel v. Jain**, 925 A.2d 782[, 797 (Pa. Super. 2007),] and **Eichman v. McKeon**, 824 A.2d 305[, 320 n.8 (Pa. Super. 2003)].

**Additionally, the probative value of the testimony is outweighed by the danger of confusing the issues**. **See** Pennsylvania Rule of Evidence 403. The jury would have to determine the credibility of Mr. Stuby's testimony that a customer was kicking or shifting a mat. But, after Mr. Castelluccio was injured, Mr. Stuby's supervisor warned team members to watch the mats closely, Mr. Stuby's sole employment at the time of his deposition was Giant Eagle[,] and Mr. Stuby knew he could be in trouble with Giant Eagle for not properly maintaining the mat. Thus, the jury would have to assess Mr. Stuby's credibility to determine if he contrived the story to avoid the impact on his employment for improper maintenance of the mat. … However, **the jury would be confused because its ability to assess Mr. Stuby's credibility is impaired by the lack of video recording of [Mr. Stuby's] deposition and his death prior to trial**. Therefore, [the trial court] correctly decided to exclude the portions of Mr. Stuby's deposition where he testified to seeing a customer kicking or shifting a mat.

Trial Court Opinion, 12/8/22, at 2, 6-9 (emphasis and footnote added).

Our review again discloses record and legal support for the trial court's sound reasoning. We discern no abuse of discretion in the trial court excluding Mr. Stuby's deposition testimony under Pa.R.E. 403. Giant Eagle's third issue does not merit relief.

In its final issue, Giant Eagle claims the "trial court erred when instructing the jury because it added a misleading instruction" to "the standard

jury instruction regarding the duty of care that a business owner owes to its invitees." Giant Eagle Brief at 30. Specifically, prior to trial, Giant Eagle asked that the trial court not charge the jury pursuant to Pennsylvania Suggested Standard Civil Jury Instruction 18.40, *see* Pa.S.S.J.I. (Civ.) 18.40 (duty of care owners/occupiers of land owe to invitees), but instead charge the jury as follows:

> To establish that Giant Eagle was negligent, [Mr. Castelluccio] must first prove that Giant Eagle knew, or in the exercise of reasonable care, should have known of the existence of the carpet in a dangerous condition immediately prior to [Mr. Castelluccio] falling.

Giant Eagle's Proposed Jury Instructions, 10/5/21, at 5; *see also id.* at 6 (Giant Eagle's proposed instruction on duty of care); Giant Eagle Brief at 30. Giant Eagle challenges the trial court's refusal to give its proposed instruction, instead arguing that the instruction the court gave at trial[7] improperly "allowed the jury to hold Giant Eagle liable without hearing any evidence that Giant Eagle had notice of the dangerous condition." Giant Eagle Brief at 30.

Mr. Castelluccio counters "the trial court properly instructed the jury that if the dangerous condition was created by [Giant Eagle], [Mr. Castelluccio] need not show any further notice." Appellee's Brief at 24 (capitalization omitted). According to Mr. Castelluccio:

---

[7] We detail below the language of the trial court's instruction. Prior to the instruction, counsel for the parties detailed their respective arguments on the matter. *See* N.T., 9/24-29/21, at 435-37; *see also id.* at 572-73 (trial court's jury instruction on negligence and duty of care).

- 13 -

[Giant Eagle's] position that [the trial court's jury] charge was not appropriate is based upon a fundamental misunderstanding of the evidence which was presented. In this case, the negligence was established by recognizing that the loose[-]laid mats were dangerous and it was [Giant Eagle] which directed their use and placement.

*Id.* at 25-26.

In reviewing a challenge to a jury charge:

[O]ur scope of review is to determine whether the trial court committed [a] clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error. A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.

*Frisch v. James River Ins. Co.*, 265 A.3d 765, 773 (Pa. Super. 2021) (citation, emphasis, and brackets omitted). Further, "a supplemental jury charge 'must be viewed in conjunction with [the original jury charge], not divorced therefrom and in isolation.'" *Id.* (quoting *Polett v. Public Communications, Inc.*, 126 A.3d 889, 933 (Pa. 2015)).

The trial court competently rejected Giant Eagle's claim:

[T]he instructions that I provided the jury simply set forth longstanding Pennsylvania law on the obligations of an owner or occupier of land. *See* [N.T., 9/24-29/21, at] 572-[]73. The first part of my instruction on this topic comes from Pennsylvania Suggested Standard Civil Jury Instruction 18.40, which describes the actual or constructive notice necessary for liability. This jury

instruction is derived from the Restatement (Second) of Torts §§ 343 and 343A, which have been adopted by the Pennsylvania Supreme Court. The second part of my instruction is explained in ***Hyatt v. County of Allegheny***, 547 A.2d 1304 (Pa. Cmwlth. 1988),[8] which involved circumstances similar to those encountered by Mr. Castelluccio in the Moon [Store]…. In ***Hyatt***, the Commonwealth Court relied on Pennsylvania Supreme Court precedent for there being an exception to the actual or constructive notice necessary for liability when the owner or occupier is the one who created the dangerous condition. ***Id.*** at … 1308. Therefore, [the trial court] provided the jury with an accurate instruction on the law concerning Giant Eagle's duty to Mr. Castelluccio.

* * *

Giant Eagle [also] claims [the trial court] committed an error by rejecting its proposed jury instruction on the duty it owed to Mr. Castelluccio. During the charging conference[,] Giant Eagle requested that [the court] not charge the jury with Pennsylvania Suggest[ed] Standard Civil Jury Instruction 18.40, but instead charge the jury:

> To establish that Giant Eagle was negligent, [Mr. Castelluccio] must first prove that Giant Eagle knew, or in the exercise of reasonable care, should have known of the existence of the carpet in a dangerous condition immediately prior to [Mr. Castelluccio] falling.

***See*** [N.T., 9/24-29/21], p. 436; Proposed jury instructions filed 10/5/2021 as Document 41, p. 5. **This is not a complete statement of Giant Eagle's duty to Mr. Castelluccio since it omits the requirement that Giant Eagle inspect the premises to discover dangerous conditions and other concepts set forth in Standard Instruction 18.40**. Also, Giant Eagle's requested instruction cites ***Moultrey v. Great A&P Tea Co.***, 422 A.2d 593 (Pa. Super. 1980), but omits this statement of the law applicable to the circumstances encountered by Mr. Castelluccio: "where the condition is one which the owner knows

_____

[8] Although decisions of the Commonwealth Court are not binding on this Court, they may be persuasive. ***Taylor v. Pa. State Corr. Officers Ass'n***, 291 A.3d 1204, 1207 n.1 (Pa. Super. 2023).

has frequently recurred, the jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it." *Id.* … [at] 596. Therefore, [the trial court] correctly rejected Giant Eagle's proposed jury instruction on the duty it owed to Mr. Castelluccio.

Trial Court Opinion, 12/8/22, at 18-20 (emphasis and footnote added; some citations modified).

As the trial court's foregoing reasoning is supported by the record and the law, *see id.*, we discern no abuse of its discretion in charging the jury. Giant Eagle's final issue fails.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2023