J-S39012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ESTATE OF ANN RODENBACH, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  ANTONIO MARRERO AND KALYNE WISMER | : : : : : : : | No. 742 EDA 2025 |

Appeal from the Order Entered January 9, 2025
In the Court of Common Pleas of Northampton County
Orphans Court Division at No:  C-48-OC-4822-0801

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 29, 2026**

Appellants, Antonio Marrero and Kalyne Wismer, appeal from the January 9, 2025 orphans' court order dismissing their complaint and directing that Property located at 3 Dusty Road in Palmer, Northampton County (the "Property") be sold by the Estate (the "Estate") of Ann Rodenbach in accordance with the terms of her last will and testament (the "2018 Will"). We affirm.

Rodenbach died testate on December 9, 2021.  She was survived by three sons, Ronald, Thomas, and Barry Wismer.[1]  A fourth son, Jeffrey Wismer, predeceased her.  Appellant Kalyne Marrero ("Kalyne") is Rodenbach's granddaughter and Thomas's daughter.  She is married to

_____

[1] We will refer to Rodenbach's surviving sons by their first names.

Appellant Antonio Marrero ("Antonio"). Kalyne and Antonio have three minor children together.

This dispute arises out of two documents, both executed on June 26, 2018. The first is Rodenbach's 2018 Will. The 2018 Will devised the Property to Appellants subject to Appellants' compliance with the terms of a Long Term Agreement of Sale ("LTA"). Both documents were signed on June 26, 2018. The 2018 Will provides:

> I give devise and bequeath all right, title and interest in [the Property] to my granddaughter [Kalyne] and her fiancée [Antonio] so long as they have resided there and have abided by the terms of the Long Term Agreement of Sale that we executed contemporaneously with my execution of this my Last will and testament. In the event [Kalyne] and [Antonio] either abandon their interest in or breach the terms of the [Agreement], my Executor shall place the [Property] for sale.

2018 Will, at Part Second, ¶ (f).[2]

Under the LTA, the purchase price for the Property was $281,479.97, to be paid in installments of $1,300.00 over 38 years by Appellants, as the designated buyers. LTA at ¶ 2(b). In essence, Appellants were making payments, on Rodenbach's behalf, toward the existing mortgages on the Property.[3] *Id.* at ¶ 2(b)(ii). Rodenbach, as seller, agreed to continue to pay

---

[2] The 2018 Will was introduced in trial as Executor's (Barry) Exhibit 1.

[3] According to Appellants' first amended complaint, the Property was encumbered by two mortgages at the time the 2018 Will and LTA were executed. First Amended Complaint, 6/26/23, at ¶ 11. Appellants and Rodenbach entered the LTA because Appellants were unable to refinance the

*(Footnote Continued Next Page)*

the real estate taxes for the Property. *Id.* at ¶ 2(c). Legal title was to transfer on May 26, 2058, upon payment of the final installment. *Id.* at ¶ 3. The LTA also permitted the seller to declare the LTA null and void in the event of buyers' default on payment, uncured for 90 days, and evict the buyers and sell the Property. *Id.* at ¶ 17.

During Rodenbach's lifetime, Appellants occasionally fell behind on their payments under the LTA. But as of December 9, 2021, the date of Rodenbach's death, Appellants were up to date on their payments under the LTA, and they were still living at the Property, in compliance with Part Second, ¶ (f) of the 2018 Will. On July 12, 2022, Ronald filed a petition for letters of administration for Rodenbach's Estate (the "Estate"). On August 3, 2022, the Northampton County Register of Wills granted Ronald's petitions and admitted the 2018 Will to probate. On April 4, 2023, the Orphans' Court issued a decree removing Ronald as executor and replacing him with Barry. Letters of administration were issued to Barry on April 20, 2023. The Property was the main asset of the Estate, and Barry and Ronald were the residuary beneficiaries.

After Rodenbach's death, Appellants ceased making payments under the LTA, and they stopped living at the Property. Ronald claimed that his delay

_____

mortgages encumbering the Property. *Id.* at ¶¶ 12-13. Rodenbach executed a deed to be held in escrow and transferred to Appellants upon satisfaction of the mortgages encumbering the Property. *Id.* at ¶ 17.

in opening the Estate was to give Appellants time to refinance the mortgage on the Property, but Appellants were unable to obtain financing. Barry visited the Property with Thomas on April 20, 2023, and found an Act 91[4] notice posted on the door. Barry entered the home on the Property with the aid of a locksmith and found the home in poor condition. Barry noted holes in the ceiling, garbage throughout the house, dirty walls, exposed wiring, and an untended chicken coop on the yard. The lawn on the Property was three feet tall and in need of mowing.

Antonio acknowledged moving out of the Property on April 1, 2023, but he claimed that he and Kalyne did not intend to abandon the Property. Kalyne claimed that she and Antonio intended to renovate the Property and move back when renovations were complete. Antonio tried twice after the execution of the LTA to refinance the loan on the Property but was denied both times. After Rodenbach's death, Antonio claimed he had an oral financing agreement with a personal friend who was interested in fixing up and reselling the Property.

As of June 24, 2023, the Property had a past due mortgage balance of $10,270.15, and no payment had been made since February of 2023. Barry and Thomas took over payments for the Property's mortgage and utilities in order to maintain the Property and prevent foreclosure. Because Appellants

_____

[4] 35 P.S. § 1680.401c, *et. seq.*

- 4 -

were no longer in compliance with the LTA, the Estate sought to place the Property for sale.

Appellants' first amended complaint sought a declaration of their rights under the LTA and an injunction against the Estate. First Amended Complaint, 6/26/23, at ¶¶ 34-35. They also alleged that the Estate breached the LTA by repossessing the Property. *Id.* at ¶¶ 44-51. Appellants' action was filed in the civil division but eventually consolidated with this Estate proceeding before the orphans' court. Appellants claim that the 2018 Will required their compliance with the LTA only until Rodenbach's death. They also claim, in the alternative, that the Estate breached the LTA by repossessing the Property without giving Appellants sufficient time to cure their alleged default under the LTA. After a non-jury trial, the orphans' court concluded that Appellants were in breach of their obligations under the LTA. The court therefore entered an order permitting the Estate to sell the Property in accordance with the terms of the 2018 Will.[5] Appellants filed a supersedeas bond pending the outcome of this appeal.

_____

[5] During the pendency of the Estate, Thomas challenged the 2018 Will as a forgery. The 2018 Will essentially wrote Thomas out of the Estate, in contrast to a will Rodenbach executed in 2017. The trial court, in the order presently on appeal, rejected Thomas's challenge, finding that the 2018 Will was authentic. Thomas has not appealed that portion of the order. He has however, filed a *pro se* motion to compel with this Court on March 11, 2026. That motion is not a substitute for an appeal, nor can it be a means of relitigating the matter of the 2017 will. We therefore deny the motion to compel.

We begin with our standard of review:

> When an appellant challenges a decree entered by the [o]rphans' [c]ourt, our standard of review requires that we be deferential to the findings of the [o]rphans' [c]ourt.
>
> [We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Estate of J.L.C.*, 321 A.3d 999, 1003 (Pa. Super. 2024).

Appellants raise five assertions of error:

A. Whether the trial court lacked jurisdiction to exercise its equitable powers and rule on the issue of abandonment where an adequate legal remedy at law existed through contractual and legal remedies?

B. Whether the trial court erred in finding that [Appellants] abandoned their interest in [the Property] where [Appellants] presented evidence of their continued interest, use, and possession of the Property?

C. Whether the trial court erred in failing to address the Estate's unlawful repossession of the Property prior to the expiration of the 90-day cure period, thereby clouding title and impairing [Appellants'] ability to complete the purchase of [the Property under the LTA]?

D. Whether the trial court erred in failing to find that the Estate materially breached the [LTA] by failing to pay property taxes as required under the agreement?

E. Whether the trial court erred in failing to grant declaratory relief establishing that the specific devise of the Property under the [2018 Will] at the time of [Rodenbach's] death, where [Appellants] presented evidence that all conditions precedent to vesting were satisfied?

- 6 -

Appellants' Brief at 8.

Appellants first argue that the orphans' court erred in imposing an equitable remedy when adequate legal remedies existed. It is well settled, as Appellants argue, that "equity has jurisdiction only in the absence of a full, complete and adequate remedy at law." *SLT Holdings, LLC v. Mitch-Well Energy, Inc.*, 249 A.3d 888, 895 (Pa. 2021). But Appellants' argument ignores two crucial points. First, they initiated this action seeking declaratory relief. Declaratory judgment actions arise in equity. *Taylor v. Pennsylvania Corr. Officers Assoc.*, 291 A.3d 1204, 1207 n.2 (Pa. Super. 2023). Appellants also sought an injunction against the Estate, and an injunction is an equitable remedy. *CKHS, Inc. v. Prospect Med Holds., Inc.*, 329 A.3d 1204, 1217 (Pa. 2025).

Second, Appellants overlook the fact that the orphans' court imposed a contractual remedy. The LTA provides for the sale of the Property in the event of Appellants' default under the terms of the LTA. The orphans' court did not arbitrarily ignore the language of the 2018 Will or the LTA in favor of an equitable remedy. Rather, the court enforced the LTA as written:

> Buyers and Seller acknowledge and agree that TIME SHALL BE OF THE ESSENCE OF THE AGREEMENT and all its conditions and in the event that Buyers shall fail to make their payments as aforesaid or otherwise default and such default shall continue uncured for a period of Ninety (90) days, the Sellers [sic] shall have the right to declare this agreement null and void retaining all amounts paid by buyers to date and in [sic] evict Buyers and sell the premises upon such terms and conditions as they shall deem proper.

LTA at ¶ 17 (capitalization in the original). This language parallels the 2018 Will, at Part Second, ¶ (f), quoted above. As we shall explain in further detail below, the orphans' court found that Appellants' default under the LTA spanned more than 90 days. There was no need for an eviction proceeding because Appellants had already left the Property. Appellants' first argument misses the mark.

With their second argument, Appellants claim that the orphans' court's finding of abandonment was an error of law and unsupported by the facts of record. Appellants' Brief at 5, 37. Appellants cite ***Metzger v. Bensalem Twp. Zoning Hearing Bd.***, 645 A.2d 369 (Pa. Cmwlth. 1994), for the proposition that periodic nonuse of property does not constitute legal abandonment. Appellants' Brief at 37-38. ***Metzger*** is inapposite, as the issue there was a party's nonconforming use under a zoning ordinance. Moreover, as we explained above, the LTA did not address common law abandonment; it addressed Appellants' defaults on their obligations under the LTA. Appellants were contractually required to make their monthly mortgage payments and to maintain all necessary utilities payments. LTA, at ¶¶ 2, 6. Appellants were also required to keep the Property "clean and tidy." ***Id.*** at ¶ 19. The record is clear that Appellants made no further payments under the LTA after February of 2023, and that they ceased making utilities payments shortly thereafter. Further, as recited above, the record contains evidence supporting a finding that they failed in their contractual obligation to keep the

Property clean and tidy. Appellants had not cured their default as of the June 2023, nonjury trial. In other words, the payment default persisted for more than 90 days prior to trial. Appellants were $10,270.15 in arrearages as of trial. N.T. Trial, 6/24/23, at 45-46. Likewise, the trial court credited testimony that the Property was not occupied and was in poor condition when Thomas and Barry entered it on April 20, 2023. Orphans' Court Opinion, 1/9/25, at 75-77.

The 2018 Will, as quoted above, required Appellants to reside at the Property. 2018 Will, Part Second, ¶ (f). The orphans' court found Appellants failed to comply, noting that they left the Property at the beginning of March 2023, and signed a one-year lease for a home in Bethlehem, Pennsylvania, beginning on April 1, 2023. Orphans' Court Opinion, 1/9/25, at 77-78. The orphans' court was not required to credit Appellants' testimony that they intended to renovate the Property and move back in at a later date. For the foregoing reasons, we discern no error in the orphans' court's finding that Appellants were in breach of the LTA and had failed to meet the continued residence requirement of the 2018 Will.

We are cognizant that the orphans' court also engaged in an analysis of the law of abandonment. Orphans' Court Opinion, 1/9/25, at 80-84. The court's analysis of abandonment is in addition to the court's finding that Appellants were in breach of their obligations under the 2018 Will and the LTA, and it is an alternate means of arriving at the same conclusion. Because the

law of abandonment was unnecessary to the orphans' conclusion and unnecessary to our disposition of this appeal, we do not address it.

With their third argument, Appellants claim that the Estate breached the LTA by entering the home on the Property on April 20, 2023, and changing the locks. As of that date, Appellants had not been given the contractually-required 90 days to cure their default. Appellants therefore characterize the Estate's action as an unlawful self-help repossession.

While Appellants are correct that the Estate's overstepped its authority, they do not satisfactorily explain why they are entitled to relief on that basis. As discussed above, Ronald and Thomas found the Property in poor condition, with an Act 91 notice posted on the front door, when they visited Property in April of 2023. Appellants do not explain how they were harmed by the Estate's efforts to maintain the Property and prevent foreclosure. Furthermore, the Estate's remedial actions did not prevent Appellants from curing their payment default within the contractual 90-day period. They did not.

Appellants' fourth argument is that the Estate was not entitled to an equitable remedy because of its unclean hands. "The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue." *Terraciano v. Commonwealth, Dep't of Transp.*, 753 A.2d 233, 237–38 (Pa. 2000). Appellants claim the Estate was in default of its obligation to pay real estate taxes for the Property, an obligation the LTA imposed on the Seller, and one that Rodenbach complied

with during her lifetime. Once again, Appellants' argument ignores the fact that the orphans' court imposed a legal remedy. The doctrine of unclean hands does not apply. In any event, by the time of trial the Estate had assumed responsibility for maintaining the Property and keeping it out of foreclosure. Appellants fourth argument fails.

Finally, Appellants argue that the 2018 Will and the LTA created a devise to them of the Property which vested immediately upon Rodenbach's death. Appellants' Brief at 5, 50. This argument rests in part upon an interpretation of the 2018 Will, and so we proceed mindful of the following:

> The interpretation of a will presents a question of law; our standard of review is de novo. No rule regarding wills is more settled than the general rule that the testator's intent, if it is not unlawful, must prevail. Moreover, the testator's intention must be ascertained from the language and scheme of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but is what is the meaning of his words.

*In re Estate of Byerly*, 341 A.3d 191, 194 (Pa. Super. 2025) (citation omitted), *appeal denied* ___ A.3d ___ (Pa. Dec. 19, 2025).

Appellants' argument is based on Part Second, (f) of the 2018 Will, which we quote once again for reference:

> I give devise and bequeath all right, title and interest in [the Property] to my granddaughter [Kalyne] and her fiancée [Antonio] so long as they **have resided** there and **have abided** by the terms of the Long Term Agreement of Sale that we executed contemporaneously with my execution of this my Last will and testament. In the event [Kalyne] and [Antonio] either abandon their interest in or breach the terms of the [Agreement], my Executor shall place the [Property] for sale.

2018 Will, at Part Second, (f). Appellants claim, based on the use of the words "have resided" and "have abided", that their compliance with the terms of the LTA was meant to be evaluated at the time of Rodenbach's death. In other words, Appellants argue that their compliance with the LTA was to be analyzed as of the time of Rodenbach's death. And if Appellants were compliant at that time, the Estate would have no further interest in the Property.

Appellants' argument ignores several terms of the LTA. As noted above, the LTA remained in effect for 38 years from its execution; Appellants' last payment was to be made on May 26, 2056. LTA, ¶ 2(b)(i). Title was to be transferred to Appellants, subject to the existing mortgage, on May 26, 2058. *Id.* at ¶ 3. The 2018 Will expressly incorporates the LTA, and the LTA, by its terms, remains in force until 2058. Rodenbach was 79 years old when she executed the Will and the LTA. Given these facts, Rodenbach plainly contemplated that the LTA would remain in force after her death.

We acknowledge, however, that the potential ramifications of the long-term pendency of the LTA could have been problematic. Appellants argue the Estate could not possibly be expected to remain open, monitoring Appellants' compliance with the LTA, until 2058.[6] Appellants argue, albeit without citation to authority, that public policy favors timely estate administration. Appellants' Brief at 56-57. The Estate counters that the LTA was drafted with the

_____

[6] The 2018 Will did not purport to create a testamentary trust.

- 12 -

understanding that Appellants would refinance the mortgage on the Property, after which the LTA would no longer govern. Appellants tried and failed to refinance the Property twice before Rodenbach died, and they were unable to do so afterward.

Notably, Appellants do not address unlawful restraints on alienation of real property, and they do not analyze the LTA under the law governing conditions subsequent to a testamentary devise. We have no basis for doing so *sua sponte.* Accepting as true Appellants' argument that public policy favors the timely administration and distribution of an estate, Appellants fail to explain how the orphans' court's order violated that policy in this case. The sale of the Property will facilitate the expeditious administration and distribution of the Estate.

Ultimately, the parties' arguments on Appellants' final assertion of error invite this Court to focus on what *might* have happened (an indefinitely open Estate); or what *should* have happened (Appellants' refinancing the mortgages on the Property); to the exclusion of what *actually* happened. The orphans' court, in contrast, applied the express terms of the 2018 Will and the LTA to the facts before it: Appellants, in their failure to make mortgage payments, in their failure to pay for utilities, and their failure to keep the Property clean and tidy, defaulted on their obligations under the LTA several months after the Estate was opened. They failed to cure their default within

90 days. The 2018 Will and the LTA direct the Estate to sell the Property under those circumstances. The orphans' court ordered precisely that.[7]

Order affirmed. Motion to compel denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/29/2026

---

[7] Appellants' brief also includes an argument that the orphans' court erred in releasing claims against nonparties not before the court. Appellants' Brief at 57-58. We do not address that question, as it was not included in Appellants' statement of questions presented. Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or fairly suggested thereby.").